## COURTNEY *v.* APPLE.

1. DEATH—INFANTS—CONTRIBUTORY NEGLIGENCE OF MOTHER—RECORD—INSTRUCTIONS—ARGUMENT TO JURY.

   Showing made under record presented in action for death of 3-year-old child failed to indicate that jury could have been influenced by any consideration of contributory negligence of child's mother by any claimed reference thereto in argument of defendant's counsel, where record presumably containing such argument in full does not appear to claim she was guilty of negligent conduct contributing to the child's death, the issue was eliminated at the pretrial hearing, the trial judge's charge specifically eliminated it from consideration and the request so to charge that was submitted by defendant's counsel had been denied (CL 1948, § 691.581 *et seq.*)

2. SAME—NEGLIGENCE—INSTRUCTIONS—FINDING OF JURY.

   Omission to charge that defendant was guilty of actionable negligence did not constitute prejudicial error to plaintiff administrator in action for death of 3-year-old child, where jury must have found defendant guilty of negligence, since it re-

REFERENCES FOR POINTS IN HEADNOTES

[2] 16 Am Jur, Death § 362.
[3] 16 Am Jur, Death § 44.
[4, 5] 16 Am Jur, Death § 287.
[6] 16 Am Jur, Death §§ 176, 177.
[7] 16 Am Jur, Death § 190 *et seq.*
[8] 16 Am Jur, Death § 379.
[9] 16 Am Jur, Death § 358.

turned a verdict for plaintiff for funeral expenses (CL 1948, § 691.581 *et seq.*).

3. SAME—REMEDY—STATUTES—DAMAGES.

The remedy for wrongfully causing a death rests wholly on the death act, hence, the recovery of damages is necessarily limited to those specified by the legislature and sustained by the proofs (CL 1948, § 691.581 *et seq.*).

4. SAME—NEGLIGENCE—DAMAGES.

The death act does not imply that damages and pecuniary injury necessarily flow from the negligent hitting of a person (CL 1948, § 691.581 *et seq.*).

5. SAME—DAMAGES—PLEADING—EVIDENCE.

Damages under the death act must be made to appear by proper allegation in the declaration and proof of the fact (CL 1948, § 691.581 *et seq.*).

6. SAME—DAMAGES—SUPPORT.

Damages under the death act must be limited to the pecuniary damage sustained by those legally entitled to support (CL 1948, § 691.581 *et seq.*).

7. SAME—INFANTS—MEASURE OF DAMAGES.

The trier of the facts in an action under the death act for the negligent killing of a young child is required to determine the difference between probable contributed earnings, during minority, to a parent, and the cost of maintaining and educating such child until majority (CL 1948, § 691.581 *et seq.*).

8. SAME—INFANTS—DAMAGES.

It is not to be inferred in an action under the death act for the negligent killing of a young child that the failure to return a substantial verdict on the ground that a substantial loss was sustained by the parent was prompted by any improper motives or considerations (CL 1948, § 691.581 *et seq.*).

9. SAME—PARTIAL NEW TRIAL—DAMAGES—INFANTS—FUNERAL EXPENSES—INSTRUCTIONS—EVIDENCE.

It was error for the trial court *sua sponte* to enter an order for partial new trial as to damages after setting aside verdict and judgment for plaintiff in the amount of funeral expenses of 3-year-old child for whose death action had been brought under the death act, where it does not appear that verdict was influenced by improper considerations or that there was any failure to follow the instructions given and proofs showed respective ages and health of the parents of the child and his age, health and disposition (CL 1948, § 691.581 *et seq.*).

SHARPE, SMITH, and BOYLES, JJ., dissenting.

Appeal from St. Clair; Black (Eugene F.), J. Submitted October 6, 1955. (Docket No. 49, Calendar No. 46,500.)   Decided April 2, 1956.

Case by Edward John Courtney, administrator of the estate of John Martin Courtney, deceased, against Edgar W. Apple for damages under death act as result of deceased child being struck by automobile.   Verdict and judgment for plaintiff in amount of funeral expenses only.   Order entered by trial judge *sua sponte* for partial re-trial in respect to damages.   Defendant appeals.   Reversed and remanded with instructions to set aside order and enter judgment on verdict.

*Albert E. Taylor* (*W. Ralph Delaney,* of counsel), for plaintiff.

*Walsh, Walsh, O'Sullivan, Stommel & Sharp,* for defendant.

CARR, J.   This case has resulted from a traffic accident occurring on a public highway in St. Clair county on November 10, 1953.   Plaintiff's decedent, a child at the time 2 years, 11 months and 26 days of age, was struck by an automobile driven by the defendant, sustaining injuries resulting in death. The declaration filed by plaintiff in the case alleged negligence on the part of the defendant in a number of particulars, including excessive speed, lack of caution in the operation of his motor vehicle, and failure to make reasonable observations as to the presence of others on the highway.   The recovery of damages was sought for pain and suffering, for loss of such amounts as the child might have earned after attaining maturity, and for expenses attributable to the injuries.   The answer of the defendant denied liability.

On the pretrial hearing held by the circuit judge who later tried the case, it was apparently conceded that death was instantaneous, that the cause of action was predicated on the death act,* and that the declaration alleged items of damages not recoverable under said act. The order entered set forth the following with reference to plaintiff's claims for damages:

"(a) Expenses of decedent's funeral and burial, were stipulated by the parties at an aggregate sum of $700.

"(b) The present value of the decedent's earnings, if any, during the remainder of his minority, less the present value of the cost of his support during the same period."

It was further stated in the pretrial order that the triable issues should be:

"1. Whether the defendant was guilty of negligence which caused or contributed in causing the decedent's death.

"2. If such negligence is found by the jury, the amount of damages suffered by the surviving parents measured by the rule stated above."

The case was tried before a jury. The charge of the trial judge submitted for determination the issues of fact as determined at the pretrial hearing. The rights and the claims of the respective parties were fully and clearly covered. With reference to recoverable damages the jury was told that the funeral expenses had been stipulated and that if a verdict for the plaintiff was returned it should include the amount on which counsel had agreed, namely, $700. The method of determining the present value of decedent's earnings during his minority, less the cost of his support, was also explained.

---

* PA 1848, No 38, as amended by PA 1939, No 297 (CL 1948, § 691.-581 et seq. [Stat Ann 1953 Cum Supp § 27.711 et seq.]).

The jury returned a verdict in favor of the plaintiff for the sum of $700, the amount of the funeral and burial expenses. Judgment was entered on the verdict. The following day the trial judge entered an order *sua sponte* granting a new trial with reference to the matter of damages. From such order defendant, on leave granted, has prosecuted an appeal in the nature of certiorari. In substance it is the claim of appellant that the case was properly submitted to the jury, that the verdict as returned was permissible and proper under the record, and that there was no basis for the order granting a partial new trial. Appellee contends that the trial judge properly exercised his discretion in making the order from which the appeal has been taken.

In allowing a new trial with respect to damages the circuit judge indicated that errors had occurred on the trial that resulted, or may have resulted, to the prejudice of the plaintiff. He stated that counsel for defendant in his argument to the jury had discussed the matter of contributory negligence on the part of the mother of the child. The argument of counsel is set forth in the record before us, presumably in full, and we have examined it carefully. It does not appear that any claim was made therein that Mrs. Courtney was guilty of negligent conduct contributing to the child's death. At the pretrial hearing any issue of contributory negligence was eliminated, and in his charge to the jury the judge specifically stated that no such question was to be considered in the case. It appears that counsel for defendant submitted a request to charge with reference to possible negligence on the part of the mother, but the request was denied. There is no showing in the record to indicate that the jury could have been influenced by any such consideration.

As a further possible error, the trial judge in his order for a partial new trial indicated that in his

opinion the proofs would have justified a charge that defendant was guilty of actionable negligence. This statement was further amplified in written reasons later filed. The record before us does not contain any of the proofs other than brief excerpts from testimony given by plaintiff and by Mrs. Courtney. In consequence, we are unable to say whether a charge of the character suggested would have been proper. However, it is evident that the jury found defendant negligent. Otherwise the verdict for $700 would not have been returned. Such being the situation, it cannot be said that the failure to give a charge of the character in question, if justified by the proofs, was prejudicial to plaintiff.

* The principal reason assigned in support of the order for a partial new trial is that the jury should have returned a verdict for a substantial amount to cover the pecuniary loss sustained by the father as a result of the death of the child, in addition to the amount allowed for funeral and burial expenses. In considering this question it must be borne in mind that the right to recover damages for wrongfully causing a death rests wholly on the statute. The remedy under the death act, above cited, is exclusive, and the recovery of damages is necessarily limited to those specified by the legislature and sustained by proofs. Section 2 of the statute (CL 1948, § 691.582 [Stat Ann 1953 Cum Supp § 27.712]) reads, in part, as follows:

"Every such action shall be brought by, and in the names of, the personal representatives of such deceased person, and in every such action the court or jury may give such damages, as, the court or jury, shall deem fair and just, with reference to the pecuniary injury resulting from such death, to those persons who may be entitled to such damages when recovered and also damages for the reasonable medical, hospital, funeral and burial expenses for which the

estate is liable and reasonable compensation for the pain and suffering, while conscious, undergone by such deceased person during the period intervening between the time of the inflicting of such injuries and his death: Provided, however, That such person or persons entitled to such damages shall be of that class who, by law, would be entitled to inherit the personal property of the deceased had he died intestate."

In accordance with the interpretation placed on the above-quoted language of the statute, in numerous decisions of this Court, the jury in the instant case was charged that, if they found for plaintiff, they should allow:

"The present worth of the future services to his father which you find John Martin Courtney would have rendered had he and his father continued to live, between the date of his death and his 21st birthday. From this aggregate sum you should deduct the present worth of whatever amount you find Mr. Courtney would have paid out or incurred for maintaining John Martin Courtney during that same period."

On behalf of plaintiff proofs were introduced as to the respective ages and health of the parents of the child, and as to his age, health and disposition. Otherwise it does not appear that the jury had before it evidence to assist in determining to what extent the value of services which the child, had he lived, would have rendered to his father between the date of death and his attaining majority, exceeded, if at all, the cost that the father would have incurred in maintaining the child during said period. The determination of this matter was left to the jury under an instruction that permitted the members to draw on their own experiences in life. The evidence was sufficient to require submission of the question of the parent's damages to the jury, as this Court has recognized in

prior decisions. However, such limited testimony necessarily compelled each member of the jury to rely on his own knowledge, experience and judgment.

A charge similar in substance to the one given in the instant case was approved in *Morris* v. *Radley,* 306 Mich 689, 697. Such approval was in accord with prior decisions. In *Rajnowski* v. *Railroad Co.,* 74 Mich 20, 26, it was said:

"The defendant's counsel produced witnesses who were fathers of children, and had reared them from infancy to manhood, and inquired of them what was the pecuniary value to its parent of a male child, from the age of 5 years until it arrived at the age of 21, over and above the care, education, maintenance, and support of such child."

In *Rouse* v. *Detroit Electric Railway,* 128 Mich 149, 155, the Court cited the prior decision in *Hurst* v. *Detroit City Railway,* 84 Mich 539, 545, relating to the measure of damages for the death of a minor, and said, in part:

"The law requires in this class of cases that the administrator must show that some person has suffered some pecuniary injury by the death. The statute does not imply that damages and pecuniary loss necessarily flow from the negligent killing. This is a matter that must be made to appear by the proper allegation in the declaration, and proof of the fact. *Hurst* v. *Detroit City Railway, supra.* See, also, *Nelson* v. *Lake Shore & Michigan Southern Railway Co.,* 104 Mich 582, 588; *Walker* v. *Lake Shore & Michigan Southern R. Co.,* 104 Mich 606, 616. These damages must be limited to the pecuniary damage sustained by those legally entitled to support. *Van Brunt* v. *Cincinnati, Jackson & Mackinaw R. Co.,* 78 Mich 530."

See, also, *Peklenk* v. *Isle Royale Copper Co.,* 187 Mich 644; *Beach* v. *City of St. Joseph,* 192 Mich 296,

305; *Elliott* v. *Detroit United Railway,* 226 Mich 92, 97.

Counsel for appellant in their brief direct attention to *Covell* v. *Colburn,* 308 Mich 240. This was an action for damages for negligently causing the death of a 15-year-old girl. The jury returned a verdict for plaintiff in the sum of $650. Medical, hospital and burial expenses were shown in the sum of $596.47. The balance was regarded as the amount found by the jury to represent the difference between the cost of her support and what she would have earned had she lived until reaching her majority. Plaintiff asserted that the amount was inadequate, citing prior decisions. This Court declined to disturb the verdict of the jury, saying that (p 244):

"The amount of the verdict was a question upon which different persons might and probably would disagree. Measuring the value of the life of a child in terms of dollars and cents is abhorrent and a jury ordinarily would be prone to place it at a very large amount if the evidence warranted it. Nevertheless the rule of law is that the recovery must be limited to such damages as are proven. The child's future earnings and whether she would live to be 21 were problematical. The amount of the verdict in the instant case is justified by the testimony."

In *Baker* v. *Slack,* 319 Mich 703, the action was brought under the death act for the recovery of damages. Plaintiff's decedent was at the time a widow, 63 years of age, in good health. She had children but none dependent on her. The jury returned a verdict for $1,690, of which the sum of $190 was the amount of decedent's funeral and burial expense. Defendant appealed on the ground that there was no proof tending to show other elements of damage. This Court found that the testimony did not warrant a conclusion that the decedent suffered pain between the time of the injury and her death a few minutes

later, and, further, that there was no proof that anyone was dependent on her for support and maintenance, or anyone to whom she was morally or legally obligated to contribute. It was also pointed out that there was a lack of testimony as to her probable cost of maintenance had she lived her normal expectancy of life. The judgment was accordingly reversed, and the case remanded with directions to enter judgment for the amount of the funeral expenses only.

The foregoing cases and others of like import indicate the interpretation that this Court has placed on the provisions of the death act here involved. In an action to recover damages for the negligent killing of a young child the trier of the facts is required, under the statute, to determine the difference between probably contributed earnings, during minority, to a parent, and the cost of maintaining and educating such child until majority. It is, of course, possible that in a given case a jury in following the instructions of the judge as to the law may come to the conclusion that such cost of maintenance and education may equal or perhaps exceed possible contributed earnings. Apparently the jury in the instant case did so, and we must assume that the conclusion was reached in good faith and in the light of the best judgment, and the experiences, of the jurors. It may not be inferred because of the failure to return a substantial verdict on the ground that a pecuniary loss was sustained by the parent that any improper motives or considerations whatsoever prompted the verdict. Had the jury been charged that they must include in their verdict a substantial amount to cover the pecuniary damages sustained by the father, such instruction would have been inconsistent with the statement of the proper method to follow in determining damages. It would also have been at variance with the plain intent of the statute and with the

cases, some of which are cited above, construing and applying said statute.

Counsel for plaintiff in their brief rely on *Black v. Michigan Central R. Co.*, 146 Mich 568, as did the trial judge in his order for a partial new trial. There the action was brought to recover damages for the alleged negligent killing of plaintiff's son, a boy 7 years and 1 month of age. Plaintiff had judgment and defendant appealed claiming, among other reasons advanced for reversal, that there was no evidence to support a finding that pecuniary injury had been sustained. Testimony was introduced, as in the instant case, to show the age and condition of health of each of the parents and also the health and disposition of the boy. The primary question at issue was whether such proof was sufficient to justify submitting the issue of damages to the jury, with the right to the members thereof to rely on their own judgment and experiences. Upon this question the Court said (p 575):

"The jurors have all been boys. The average juror knows the conditions which surround a boy in a family like that of plaintiff. We think it cannot be said, as a matter of law, that there was no basis upon which to find a verdict for pecuniary loss."

The Court found no reversible error and concluded that the finding of the jury with reference to the damages sustained should not be set aside. The decision may not be regarded as holding that in every case of this character the trier of the facts is bound to award substantial damages for pecuniary injury. Such holding would be clearly at variance with later decisions above cited. It may be noted, however, that the Court clearly recognized that, given certain material facts wtih reference to the ages and health of the parties concerned, the members of the jury might rely on their own knowledge of living condi-

tions, and their judgment and experiences, for assistance in determining the issue.

The opinion in the *Black Case, supra,* referred to the decision of the Missouri court in *Parsons* v. *Missouri Pacific R. Co.,* 94 Mo 286 (6 SW 464), quoting an excerpt from the opinion. The language so quoted must be interpreted in the light of the facts involved. The action was one to recover damages for the negligent killing of the plaintiff's son, who was at the time of the age of 18 years and 4 months. The proofs disclosed that decedent was employed by defendant as a brakeman. The facts were such as to clearly indicate that a pecuniary loss was suffered by plaintiff as a result of his son's death. The Missouri court recognized the general rule to be applied in determining pecuniary loss sustained by a parent for the negligent or wrongful killing of a minor child. In holding that the verdict of the jury.in the sum of $5,000 was excessive, it was said (p 300).:

"There was no evidence tending to show what wages he was earning in that capacity, or might possibly earn in the coming 32 months, and none as to what his support would cost; but it is apparent, from common experience, taking the most favorable view of his possible earnings, and supposing during that whole period he never was sick nor lost a day; that he was furnished with clothes sufficient to last him to the end of that period, and that he was promoted as fast as could reasonably be expected by a faithful and intelligent young man of his age, yet in reason he could not, during that term, have earned, over and above his support, more than $50 per month, or $1,600 for the period. To this let there be added reasonable funeral expenses, say $200. As his death was instantaneous there were no other expenses. We then have $1,800 as the amount that, within the bounds of reason, might be given to the plaintiff in the way of damages for compensation for possible loss to him by reason of the death of his son. Can

anyone conceive of any additional pecuniary benefit the plaintiff could hope to derive from his son during his minority?"

It may be of interest to note that the above decision was cited in *Oliver* v. *Morgan* (Mo, 1934), 73 SW2d 993. This was an action for damages under the Missouri statute to recover for loss sustained by plaintiffs as the result of the death of their minor son, a child 6 years of age, who was struck and killed on a public street in St. Louis by an automobile driven by defendant Morgan. The jury returned a verdict in favor of the defendant, and plaintiffs appealed. It was claimed, among other assignments of error, that the trial court erred in instructing the jury as to the measure of damages. Such instruction involved a statement of the rule, generally recognized, that from the value of the child's services during minority must be deducted the reasonable cost of his support and maintenance during that period. In declining to hold that the charge as given was erroneous, it was said (p 997):

"Clearly this instruction is correct in limiting the damages to be allowed to the *pecuniary* loss suffered by the plaintiffs and nothing can be allowed as solatium for grief or mental anguish for the loss of the society and companionship of the deceased. * * * It is also clearly the law that the basis of the recovery is the value of the child's services to the parents during the child's minority, and that from this must be deducted the expenses of the support and maintenance of the child during that period. * * * This instruction is attacked because it requires the jury to make a mathematical calculation of debts and credits and ascertain the net value in money of the child's life to the parents. And while the jury may find a loss to the parents, this loss may be wiped out by the debit items such as for support, with the result that while the jury may find for plaintiff so far as liability is concerned, yet it

may render a verdict for defendant because there is no net damages."

Counsel in their briefs have referred to the case of *Willsen* v. *Metropolitan Street Railway*, 74 NYS 774. The jury there awarded $119 by way of compensation for pecuniary injury resulting from the killing of a minor child. The trial court thought the verdict inadequate and granted a new trial. Apparently the order was not appealed. However, in *Terhune* v. *Joseph W. Cody Contracting Co.*, 72 App Div 1 (76 NYS 255), the appellate court reversed an order of the trial court setting aside a verdict returned by the jury on the ground that the damages were inadequate. The statute under which the action was brought required "fair and just compensation for the pecuniary injuries resulting from the decedent's death to the person or persons for whose benefit the action is brought." The court said (p 4):

"We are bound by the express provision of this statute, which limits a recovery to the pecuniary loss caused to the next of kin by the decedent's death; and, while we cannot say that the death of a particular human being has caused his next of kin no pecuniary loss, we are equally unable to say, in the case of the killing of a young child under 6 years of age, that the death of the child has caused pecuniary loss to the child's parents. In such a case the question, under proper instructions, must be left to a jury; and their verdict, in the absence of any evidence to justify an inference that it was rendered under a misconception of the question submitted to them, or influenced by prejudice or sympathy, or other influences than that of a desire to fairly estimate the loss sustained, should not be interfered with. It is not disputed but that the verdict itself may be of such a character as would justify an inference of this kind, but in the case before us such an inference could not be drawn; and, upon the record as it comes before us, we think the action of the

trial judge in setting aside this verdict was not justified."

Of like import is *Gubbitosi* v. *Rothschild,* 75 App Div 477 (78 NYS 286). These decisions, on appeal, are in accord with the general rule as recognized in this State.

From the record before us it does not appear that any error occurred in the trial of the case. The issues were factual in nature and were submitted to the jury in a charge consistent with the language of the statute under which the action was brought. There is nothing to indicate that the jury in arriving at its conclusion was influenced by improper considerations, or that there was any failure to follow the instructions given. Such being the situation the verdict as rendered should not have been set aside. We find in the record no basis for such action. The trial judge was in error in entering the order for a partial new trial.

The case is remanded to the circuit court with instructions to set aside the order from which the appeal has been taken and to enter judgment on the verdict of the jury.

Dethmers, C. J., and Reid, and Kelly, JJ., concurred with Carr, J.

Smith, J. (*dissenting*). For the jury function I have a profound respect. That, plus the inexorable logic of my Brother's opinion, led me to a tentative acceptance thereof. But the case would not leave me. My misgivings first arose with the thought that if this had been a prize bull, negligently killed on the highway, without negligence on the part of its owner, the owner could have collected his full damages. But with respect to this little boy negligently killed on the highway, without negligence on the

part of his parents, a jury verdict that the father is entitled to no damages is to be permitted to stand, undisturbed by us. I recoil from the comparison but I recoil even more from the result. It is not the law of this jurisdiction that the negligent killer of a healthy little 3-year-old boy will be permitted to walk scot-free from any court to which runneth our writ.

This is the law, but not because of any sentimental or emotional considerations. It is because life has value. Not only has the Highest Authority so said (Luke 12:7) but our legislature also has spoken (CL 1948, § 691.581 *et seq.* [Stat Ann 1953 Cum Supp § 27.711 *et seq.*]). It is the interpretation of the latter pronouncement which lies within our jurisdiction.

It was not always thus. The case of *Higgins* v. *Butcher* (1606), 1 Yelv 89 (80 Eng Rep 61) was clear on the point. The plaintiff's wife had been beaten to death. Foster Serjeant objected to the declaration. The tort, he asserted, "is now dead with the wife." So it was. The offense was held "an offence to the Crown, being converted into felony, and that drowns the particular offence." Even after 200 years of progress the question was apparently regarded as settled beyond argument. In *Baker* v. *Bolton* (1808), 1 Camp 493 (170 Eng Rep 1033), plaintiff's wife was injured in the overturn of a stagecoach. She died a month later as a result of injuries sustained. Plaintiff claimed damages for the loss of her comfort, fellowship, and assistance. It appeared not only that the plaintiff was much attached to his deceased wife, but that, "being a publican, she had been of great use to him in conducting his business." It mattered not. "In a civil court," said Lord Ellenborough, without the need for citation of authority, "the death of a human being could not be complained of as an injury." The

reasons for the rule are obscure and this is not the forum for their exhaustion. Notions of vengeance, which stopped at the door of death, of the highly technical doctrine of merger, of the utter impossibility of compensating in money the life of a freeman (so why try?) all combined in a rule of law which, possibly because of the very obscurity of its origin, defied dislodgement. The matter is well described in Tiffany, Death by Wrongful Act (2d ed, 1913), §§ 1–3, 11. See, also, Pollock, Torts (15th ed), pp 52–57, and the opinion of Mr. Justice Cardozo in *Van Beeck* v. *Sabine Towing Co.,* 300 US 342 (57 S Ct 452, 81 L ed 685).

So the doctrine rested, but not easily. Despite the reasoning of the common-law logicians, our people could not understand this: A wrongdoer who brought his victim to the very brink of human dissolution would have to respond in damages to the full extent of the injury. But if he took the final step and plunged his victim into the abyss, he obtained absolution from damages. No amount of talk about the sanctity, the incalculable value, of human life could justify a result which denied the very value the words proclaimed. There was, moreover, far more than logic involved. The industrial revolution had arrived and the human toll of industry was rising. Lord Campbell's act* was an effort towards amelioration of the growing hardships.

"In 1846 parliament passed the act known as the death act, and now generally given the title of its illustrious author, Lord Campbell. It, undoubtedly, was the product of an enlightened public conscience that realized the inadequacy of the law to do justice in this important phase of wrongs to the person whereby, due to the growing industrial and commer-

---

* 9 & 10 Vict c 93. This act has been officially designated as the Fatal Accidents Act, 1846, and it and subsequent related legislation is found in 17 Halsbury's Statutes of England, p 4 *et seq.*—REPORTER.

cial activities of the nineteenth century, human life was being more and more sacrificed and more and more dependents left penniless and without redress for the loss of those upon whom they leaned for support. This same realization in this country brought about similar changes in the States and with singular promptness and unanimity." *Soden* v. *Trenton and Mercer County Traction Corp.*, 101 NJL 393, 395, 396 (127 A 558).

Mr. Justice Cardozo, in *Van Beeck* v. *Sabine Towing Company, supra,* p 350, summarizes this phase of the matter in the following terms:

"Death statutes have their roots in dissatisfaction with the archaisms of the law which have been traced to their origin in the course of this opinion. It would be a misfortune if a narrow or grudging process of construction were to exemplify and perpetuate the very evils to be remedied."

It is the interpretation of the Michigan counterpart of Lord Campbell's act with which we are concerned. Our act, *supra,* first provides for an action in favor of those named, whenever the death "of a person" shall be caused by the wrongful act of another. It is at this point that we see the operation of the statute and an enlightened public conscience. No longer are the families of the deceased without redress. No longer is the wrongdoer's liability buried with his victim. Now an action may be had for the death of any "person," which we construe to mean infant, child, or adult. The damages, also, are prescribed. The jury, it is said, "may give such damages" as they "shall deem fair and just, with reference to the pecuniary injury resulting from such death." Section 2 of the statute (CL 1948, § 691.582 [Stat Ann 1953 Cum Supp § 27.712]).

It would be impossible, at this point, and against this historical background, to assert with any semblance of justification that the legislature has done

a vain and useless thing. Yet that is the substance of the argument that has been made repeatedly through the years following. It comes about in this way: An infant child is killed because of the defendant's negligence. The statute, quoted above, permits recovery only for pecuniary loss. But what *pecuniary* loss has the parent suffered? Has he not actually suffered an economic gain, what with the price of food and clothing and all? Is there not just one less mouth to feed? Can the child's (speculative) earnings possibly outweigh the (speculative) costs of his keep? We all know that a child is a burden, economically. As to him, although our rewards are rich beyond the power of speech, they are not of the purse. He has no earning power. So, as to him, it is argued, there shall be no recovery. And why not? Because he is too small, too weak. His very helplessness places him outside the law.

The courts were quick to reject the monstrous proposal and their reasoning was as practical as it was fruitful: Let the plaintiff place before the jury the age of the child, its sex, its health, and its disposition, and the situation of its parents, economically and physically. From this the jury would be permitted to arrive at a figure of pecuniary loss to the parent, *i.e.*, the amount by which the child's earnings and contributions to the home would exceed expenditures on his behalf. The court, of course, would continue to exercise its restraining influence over juries and this was thought sufficient to take care of unreasonable verdicts.

Before going on to the action of the court in the case before us, we should make certain observations concerning the above reasoning and the proofs tendered pursuant to it. The process employed is one utilizing computations in imaginary arithmetic. When a newborn baby boy is permitted to fall from the delivery table and dies from the injuries re-

ceived (*Hord* v. *National Homeopathic Hospital,*
102 F Supp 792, affirmed, 92 US App DC 204
[204 F2d 397]), man, born of woman, is with-
out the vision to compute, week by week, and
year by year, how much money the short-
lived infant would have added to the family ex-
chequer had the negligence not occurred. What
of his abilities? His strength? Would be have
survived childhood diseases, the epidemics of influ-
enza, and the teenagers' highway perils? What de-
mands, in fact, would be made on him? Would he,
in time, be called upon to alleviate the poverty of
a widowed mother, or would he enjoy the largesse
of a wealthy father? Against this, on the other side
of the ledger, what would it cost to rear him?

Before either the laity or the bar speak with
easy condemnation of the courts for requiring the
impossible, let us consider the alternative. It re-
quires little elaboration. For the negligent killing
of a child there would be no liability because no
pecuniary loss can actually be proved. Was this the
intent of the legislature? The answer is well-nigh
unanimous. This is Judge Holtzoff speaking in *Hord*
v. *National Homeopathic Hospital, supra,* page 794:

"Ordinarily such statutes limit the damages to
the pecuniary loss sustained by the family of the
deceased. No compensation is permitted for grief,
mental anguish, or sentimental loss. Probably the
purpose of this restriction is to confine the amount
of damages within reasonable bounds and to prevent
improvident and extravagant awards. On the other
hand, this limitation must not be used to defeat the
humanitarian objective of the statutes and to limit
recovery to nominal damages. The pecuniary loss
resulting from the death of a member of the family
cannot be ascertained with precision or computed
with accuracy. True, in the case of an adult, the
income of the deceased and his earning capacity
form a partial basis for a conclusion. Even in such
a situation, however, an element of chance and con-

jecture enters into the determination, because if the deceased had not lost his life as a result of the defendant's negligence, he might have died shortly thereafter in another accident or from some natural cause. For this reason mortality tables furnish some guide even though they are based entirely on averages.

"In the case of an infant who has not as yet developed any earning capacity, there is a greater play for discretion on the part of the jury. This circumstance, however, constitutes no reason for not awarding substantial damages for the death of a small child. Otherwise, the purpose of the statute would be frustrated to that extent and a person who negligently caused the death of an infant would be free of all liability. Such a result would be abhorrent and unjust. It would 'keep the word of promise to our ear, and break it to our hope.'

"The law does not differentiate between the death of an adult and the death of an infant."

Such, also, was the holding of the Rhode Island court in *Gill* v. *Laquerre,* 51 RI 158, 160 (152 A 795):

"It is contended that, owing to the fact that the decedent in the instant case was too young to have had any earning capacity, it is impossible to comply with the above rule* and therefore only nominal damages can be recovered. We cannot give our assent to this view of the law applicable to a case of this kind. To so hold would in effect result in a nullification of the statute."

And (p 161):

"While this rule leaves much to be desired as to certainty it is preferable to the alternative urged by the defendant which would permit one legally responsible for the death of a child to escape civil liability therefor. There is ample authority for this view of the law."

---

* Gross amount of earnings, less expenses.—Reporter.

And it was this Court, in *Black* v. *Michigan Central R. Co.,* 146 Mich 568, 574, which quoted with approval the following from *City of Chicago* v. *Hesing,* 83 Ill 204, 206, 207 (25 Am Rep 378):

" 'Only pecuniary damages can be recovered in such actions as this. Nothing can be given as solace or for bereavement suffered. Under instructions declaring the true rule for estimating the damages, the jury found for plaintiff in the sum of $800, but one of the errors assigned is the amount found is excessive. As a matter of law, we cannot so declare, and, as a matter of fact, how can we know the amount is in excess of the pecuniary damages sustained? When proof is made of the age and relationship of the deceased to next of kin, the jury may estimate the pecuniary damages from the facts proven, in connection with their own knowledge and experiences in relation to matters of common observation. It is not indispensable that there should be proof of actual services of pecuniary value rendered to next of kin, nor that any witness should express an opinion as to the value of services that may have been or might be rendered. Where the deceased was a minor, and left a father who would have been entitled to his services had he lived, the law implies a pecuniary loss, for which compensation, under the statute, may be given.' "

As a matter of fact, the principle here involved cuts across many fields of the law. Mr. Chief Justice Stone gave it apt expression in the anti-trust case of *Bigelow* v. *RKO Radio Pictures, Inc.,* 327 US 251, 264, 265 (66 S Ct 574, 90 L ed 652):

"Any other rule would enable the wrongdoer to profit by his wrongdoing at the expense of his victim. It would be an inducement to make wrongdoing so effective and complete in every case as to preclude any recovery, by rendering the measure of damages uncertain. Failure to apply it would mean that the

more grievous the wrong done, the less likelihood there would be of a recovery.

"The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created."

And, on page 265:

" 'The constant tendency of the courts is to find some way in which damages can be awarded where a wrong has been done. Difficulty of ascertainment is no longer confused with right of recovery' for a proven invasion of the plaintiff's rights."

The statute, then, is to be construed to accomplish its purpose, to correct a shocking and historically puzzling and obscure inadequacy of the common law. It was not a legislative ratification, for children, of the doctrine of *Higgins* v. *Butcher, supra* (1606). Recovery, on the contrary, shall be had. The alternative (of no recovery) does not square with the legislative intent. But, the courts frankly admit, proof of the kind we require in other fields of the law "is in its nature impossible." (*Wiezorek* v. *Ferris,* 176 Cal 353, 357 [167 P 234].) Why, then, do courts require the impossible? Why do they require juries to go through the form of subtracting imaginary cost items from hypothetical contributions in order to arrive at a verdict? The reason, as expressed by several courts, is probably "to confine the amount of damages within reasonable bounds and to prevent improvident and extravagant awards." (*Hord* v. *National Homeopathic Hospital, supra,* 794; *Hammaker* v. *Watts Township,* 71 Pa Super 554.) As such it serves a useful function. But, if taken literally, it can completely defeat the purpose of the statute, because the proof demanded is, in truth, impossible to produce. Under such a literal interpretation the action of the North Dakota court

in *Scherer* v. *Schlaberg & Griffin* (1909), 18 ND 421 (122 NW 1000, 24 LRA NS 520), was perfectly logical. It was held in that case that there could be no recovery for the death "of a female child named Frances 1 day less than 3 months old." The defendant had moved for a directed verdict, which was granted, and affirmed on appeal. "The experience of mankind in civilized communities," said the supreme court (p 428), "warrants the conclusion that its (the child's) net earning capacity would most likely to be a negative quantity. When it is impossible to arrive at a verdict except by speculation or surmise, guesswork, or conjecture, the case should be taken from the jury." There was, it should be noted, a vigorous dissent, addressed, in part, to the point that such a view would (p 434) " entirely frustrate the purpose of the statute providing for an action for death by wrongful act, and prevent a recovery in any case whatever."

The choice being made, it will be noted, is the choice between recovery and no recovery for the death of a "person," not merely a choice as to measure of damages. To demand the impossible of a plaintiff is to deny his action. To assert that the jury has done the impossible (and, hence, we cannot disturb) is equally to deny the action. Thus it is, we said in *Sceba* v. *Manistee Railway Co.*, 189 Mich 308, 322 (LRA 1918C, 1090):

"It has been held by many courts, including those cited in the *Black Case*, that the law presumes, in the case of the death of a minor child by wrongful act, that there has been a loss for which compensation may be given under the statute."

It is clear from the above that the jury is not to be allowed to run hog-wild in the matter of damages. It has always been under the direction and control of the trial judge and the appellate courts.

"That judgment (of the jury) is not an uncontrollable one," said the New York court of appeals, in a child death case, *Birkett* v. *Knickerbocker Ice Co.,* 110 NY 504, 508 (18 NE 108). It was the same court (*Houghkirk* v. *President of Delaware & Hudson Canal Co.,* 92 NY 219, 225) which said in speaking of the power of a reviewing court to set aside a jury's award for the death of a little girl 6 years of age:

"Upon that basis, and from such proof the jury must judge, and having done so, it is possible, though not entirely easy, for the general term to review such judgment and set it aside if it appears excessive, or the result of sympathy and prejudice. A difficult duty we grant; but not for that reason to be abandoned. In its intrinsic nature it is no more difficult than to determine whether a verdict is excessive in an action for slander or libel where the injury is to reputation, or in actions where pain and suffering may be considered in ascertaining the loss. The supreme court has never abdicated its power of review in such cases and should not in those under the statute."

It is a commonplace, then, in our courts, that we revise judgments on the ground that they are excessive. But does this exercise of our appellate discretion (or that of the trial judge) travel a one-way street? Are we invested with plenary control over excessive verdicts but powerless to do justice when a verdict of 6 cents, or less, is awarded for the death of a lad of tender years?

I say not. It is my belief that there is no valid reason why the same principle should not be applied to inadequate verdicts as to excessive verdicts. Justice CARR's opinion points out that the case went to the jury, and, he says, "We must assume that the conclusion was reached in good faith and in the light of the best judgment, and the experiences, of the

jurors." So, indeed, we must. But there is not one word here which would not be equally applicable if they had returned a verdict for $100,000 which I assume, we would have held excessive.

It is not often, it is true, that the courts are called upon to exercise their inherent powers with respect to shockingly inadequate verdicts in this area of the law. Yet, when called upon to do so, they have not hesitated to act as did the trial court below and as, in my opinion, we here should. It will not suffice to point out that in certain of the courts, the opinions of which are about to be quoted, their rule of damages may have been different, may have included, for instance, pecuniary loss after majority. The issue here is whether or not courts will let an inadequate verdict stand, whatever the elements of damage may include. The issue is whether or not the jury's conclusion is beyond the control of this Court, on the ground that they have subtracted, from an imaginary total of contributions, equally imaginary total costs, and have thus reached a conclusion that we should not disturb.

The reasoning of the court in *Morris* v. *Metropolitan Street R. Co.*, 51 App Div 512 (64 NYS 878), is characteristic of many of the decisions on inadequacy. In this case a 16-year-old boy had been killed. The father was "in prosperous circumstances, and was in no present need of support from his son." The jury found in favor of the plaintiff and by its verdict assessed his damages at 6¢. In granting a new trial the appellate court held (p 514):

"It may be conceded that the extent of damages which may be awarded in cases of this character rests very largely with the jury. But the finding and the evidence upon which it is based are subject to the same scrutiny in review by this court as upon any other question. Unless the finding be justified by the evidence, the court is called upon to set it

aside, applying thereto the same rules which the court is authorized to apply in reviewing questions of fact. *Brown* v. *Foster,* 1 App Div 578 (37 NYS 502) ; *O'Shea* v. *McLear,* 15 Civ Proc Rep 69 (1 NYS 407). Exercise of the power is not governed by any well-defined rule, but rests in the circumstances of the particular case. The measure of the plaintiff's right of recovery is the pecuniary damage which he has sustained."

Commenting on the difficulties of proof the court continued (pp 514, 515) :

"There are few cases in which special pecuniary damage can be shown. Especially is this true of infants of tender years. But such fact does not justify the court in holding that no damage is shown, or in directing that nominal damages only can be awarded, as the right to recover is not only for present, but also for prospective, loss. *Ihl* v. *Forty-second Street R. Co.,* 47 NY 317 (7 Am Rep 450). It is the evident contemplation of the statute that every person is of some relative value to others. *Oldfield* v. *N. Y. & Harlem R. Co.,* 14 NY 310. Modern legislation in this regard, both constitutional and statutory, has emphasized the assumptions to be drawn from the enactment. *Medinger* v. *Brooklyn Heights R. Co.,* 6 App Div 42 (39 NYS 613). While, as we have observed, each case is to be largely governed by its particular circumstances, yet we may consider, as bearing upon the question of the amount which ought to have been awarded, the recoveries which verdicts have established, and which the courts have upheld. *Johnson* v. *Long Island R. Co.,* 80 Hun 306 (30 NYS 318), affirmed on appeal in 144 NY 719 (39 NE 857). The authorities cited in the opinion in the last case—and they are but a tithe—show that in almost uniform course the award of damages for negligently causing the death of an infant has been of a substantial sum."

The court's conclusion as to the action of the jury is expressed in these words (p 515):

"Measured by all the surroundings, we think that the jury failed fairly to comprehend the elements of damage which the case necessarily presented, and that they erred in awarding nominal damages, for which reason this judgment should be set aside."

The supreme court of Minnesota, in the case of *Rawitzer* v. *St. Paul City R. Co.,* 94 Minn 494 (103 NW 499), had under consideration a case in which plaintiff's 17-year-old son had been killed. The jury award was $1. The court said (p 485):

"It is too obvious to justify any discussion that the award of $1 as the value of a father's pecuniary interest in the life of his son 17 years old was a reproach to the administration of justice. It follows that the action of the learned trial judge in granting a new trial was right, unless the defendant was, as a matter of law, entitled to a directed verdict in its favor. This proposition is not contested by the defendant's counsel."

Likewise in *Hammaker* v. *Watts Township,* 71 Pa Super 554, the court spoke, in part, as follows with respect to an award of $27, "the cost of the child's burial."

"These acts fixed no measure of damages for such death; but the supreme court, following the English decisions, which construed Lord Campbell's act, 9 & 10 Victoria, chap 93, on which our acts were apparently modeled, ruled that the measure of damages in case of the death of a minor child is the pecuniary value of his services during his minority, together with the expenses caused by the injury and death: *Pennsylvania R. Co.* v. *Zebe,* 33 Pa 318. Mr. Justice Thompson said in that case (pp 327, 328): 'And although, from the inherent difficulty in estimating the value of life, when called upon to compensate for its loss, we cannot lay down what may properly be

called rules, to guide in making the estimate, yet it is our duty to announce such principles of compensation as we think the legislature intended by the act in question, that there may be some approximation to uniformity of results in such cases.'

"That the purpose of the rule was to restrain the jury from excessive verdicts in favor of the injured plaintiffs is apparent from an examination of the early cases which construed the acts: *Pennsylvania R. Co.* v. *Kelly,* 31 Pa 372. But, nevertheless, the defendant must be 'held to a strict accountability to the extent that a fair interpretation of the statute will allow': *Pennsylvania R. Co.* v. *Zebe, supra,* p 330.

"While the damages according to the rule are to be only compensatory, they are also to be reasonable: reasonable no less to the injured plaintiff than to the negligent defendant." (pp 560, 561)

With respect to the action of the jury the court held (p 565):

"The verdict of the jury established the culpable negligence of the defendant and that such negligence was the proximate cause of the child's death. The jury having so found, with the evidence of the child's age, good health, bright mental condition and helpful disposition before it, a verdict fixing the pecuniary value of the child's life at the amount expended for its burial is so unreasonable and disproportionate to the value of human life, that we are convinced that it must have been influenced by partiality or prejudice, or by some misconception of the law or the evidence in the case, and in our opinion, the learned judge of the court below erred in the exercise of his judicial discretion in refusing a new trial."

Citations could be multiplied. In *Lee* v. *Publishers George Knapp & Co.,* 137 Mo 385 (38 SW 1107), the court considered an award of 1 cent for the life of a boy. The trial court had set aside the verdict and

judgment for plaintiff and granted a new trial. In affirming, the court said, in part (p. 393):

"In cases of this nature the general rule is that verdicts will not ordinarily be disturbed merely on account of the smallness of the damages awarded. But this rule is subject to the exception, that where the damages are such as to induce the conviction that the verdict was the result of either passion, prejudice, or partiality, or that the jury have shrunk from deciding the issues submitted to them, the court should interfere."

Finally, let it not be thought that there are 2 kinds of cases in this child-death field, one in which there is "proof" of excess of contributions over keep, and another in which there is no such proof. The former category does not exist, as a practical matter. In some cases the child may be shown to have made a meager contribution. But would it have continued, had death not intervened? In what amount? Would the cost of his upkeep have gone up or down? Would he have remained healthy or would he have fallen ill? The surrounding obscurity may be relieved by flashes of light here and there, but essentially the solution remains shrouded in darkness, a far cry from the clear daylight of mathematical proofs. It is precisely in this speculative field that the jury must have the closest supervision, where the court must exercise its traditional powers with the utmost care. The court in *Wallace* v. *City of Rock Island,* 323 Ill App 639, 641 (56 NE2d 636), made this clear in its opinion reversing and remanding for new trial on the ground of inadequacy of the verdict ($500 for wrongful death of a 13-year-old son):

"Damages in cases of this character are incapable of determination by any fixed mathematical calculation or rule of certainty. From the very nature of the circumstances, there can be no exact rule of deter-

mining the value of services which a deceased child would have rendered, had death not intervened. So, we find that such damages as are assessed by the jury are peculiarly subject to the power and duty of the trial judge to consider same with a view to the bounds of reasonable probability."

So much for the principles which are to guide us. Now to their application by the trial court. The jury, as Justice CARR has pointed out, returned a verdict for $700 only, the stipulated amount of the funeral expenses. No damages for pecuniary injury to the surviving father were granted. There are few cases in the books similar to it. One of the most extreme we have observed, prior to the case befor us, was that of *Lee* v. *Publishers George Knapp & Co., supra,* in which 1 cent was awarded. But in the case at bar there was no award whatever for the death. Even *Terhune* v. *Joseph W. Cody Contracting Co.,* 72 App Div 1 (76 NYS 255); *Gubbitosi* v. *Rothschild,* 75 App Div 477 (78 NYS 286); and *Covell* v. *Colburn,* 308 Mich 240, all cited by Mr. Justice CARR, involved some monetary award, were not a complete negation of the statute. Whether the same low awards would be upheld today is questionable. Some indication thereof may be found in the awards which have been upheld against attack in the modern cases. A considerable discussion of this problem is found in *Hord* v. *National Homeopathic Hospital, supra,* in which a jury award of $17,000 for the death of a child 3 days old was upheld. The court held, in part, as follows (pp 796, 797):

"In determining what constitutes a reasonable amount of damages the shrinking purchasing power of the dollar must be borne in mind. Juries are properly sensitive to this consideration. A day-to-day observation leads the court to the view that because of this circumstance the size of verdicts in tort cases has increased considerably in the past few

years, and properly so. As far back as 1888, a verdict of $1,000 for the death of a 4-month-old child was upheld in *City of Joliet* v. *Weston* (1888), 123 Ill 641 (14 NE 665); and in the following year a verdict of $2,000 for the death of a 1-year-old child was sustained in *Chicago, Milwaukee & St. Paul R. Co.* v. *Wilson* (1889), 35 Ill App 346. Bearing in mind the difference between the value of money in the 1880's and its present value, a verdict over 60 years ago of one or two thousand dollars is equivalent to one for many times that amount as of today.

"In 1906 a verdict for $2,160 for the death of a child less than a year old was sustained in *Abby* v. *Wood,* 43 Wash 379 (86 P 558).

"In 1924 a verdict for $8,000 for the death of 2 children—one 2 years old and the other 7 months old—was upheld by a Texas court, *Schaff* v. *Young* (Tex Civ App), 264 SW 582, 585.

"More recently a verdict for $5,000 for the death of a 9-months-old baby was sustained in *Immel* v. *Richards,* 154 Ohio St 52, 53–56 (93 NE2d 474).

"In 1936 a verdict of $6,000 for the death of a 12-day-old baby was upheld in *Criss* v. *Angelus Hospital Ass'n,* 13 Cal App2d 412, 420 (56 P2d 1274). The court stated that it would take judicial notice of the decrease in purchasing power of money. An award of $6,000 in 1936 would be equal to one of over $12,-000 in 1951 or 1952.

"In *Couch* v. *Pacific Gas & Electric Co.,* 80 Cal App2d 857 (183 P2d 91, 97), a verdict of $27,500 for the death of a 10-month-old child was reduced by the trial judge to $15,000. The appellate court affirmed the action of the trial judge, stating (p 867) that, 'We cannot say that the sum allowed by the court is excessive.' This decision was rendered in 1947 when the purchasing power of money was somewhat higher than it is today."

In the case before us, however, as above noted, the jury returned a verdict only for the stipulated amount of the funeral expenses, awarding no dam-

ages whatever for pecuniary loss to the father of the boy. How could this have happened? We need not speculate, for the trial judge himself, with commendable forthrightness and courage, makes it clear in his order for partial re-trial (which he entered on his own motion), and in his statement of reasons under Court Rule No 60 (1945): "On account of over-abundant caution against an expectably excessive verdict," he committed, he says, "intentional backward-leaning errors." What were these errors? We turn to his order for partial re-trial:

"An argument that pecuniary damages can and should be denied, in case of wrongful death of a child of tender years, was apparently successful in *Hurst* v. *Detroit City Railway,* 84 Mich 539. That decision did not, however, endure for long. In *Black* v. *Michigan Central R. Co.,* 146 Mich 568, it was made doubly clear for a case of this nature that the law will step in and supply, in lieu of possible and potential direct evidence the defendant has thus tortiously destroyed, an implication of pecuniary injury to the surviving parent entitling the latter to substantial damages.

"That the *Black Case* remains settled death-case law will be seen on cited reference thereto. It has been quoted or cited by our Supreme Court no less than 11 times, the last occasion being in *Crook* v. *Eckhardt,* 281 Mich 703, 714. Further cases supporting presumption of pecuniary loss in such instance, citing the *Black Case* as to Michigan, will be found in 14 ALR2d 485.

"No court, even of flinty conscience, should uphold a verdict of this nature—it being a compound of frustrated justice and monetary escape by one who should be compelled to make modest if not substantial amends. To say otherwise, by omission of judicial action or otherwise, is to grant premium on adjudged wrongful death in circumstances where pecuniary loss naturally results, and is an open invitation to more compromise in jury room contrary to specific

instructions. Being of such view, this court of its own motion will order a partial re-trial of the case under section 2 of Rule No 47 (1945), limited to the amount of pecuniary injury sustained by the surviving father."

And in the judge's statement of reasons under Rule No 60 we find more precise delineation:

"Assuming defendant had successfully moved, prior to instant application for leave to appeal, for dissolution of such *sua sponte* order this court undoubtedly and ultimately would be obliged to grant due motion for new trial by plaintiff addressed to any one of the following grounds:

"1. Failure in substantial accord with plaintiff's request 2 of jury instruction that defendant was guilty of actionable negligence.

"2. Failure of jury instruction complying substantially with plaintiff's request 6, the substance of which is the rule of implication of pecuniary loss and right to substantial damages as set forth in the *Black Case*.

"3. Failure of the court to eliminate from its instructions reference to or jury consideration of the funeral and burial expense, same having been stipulated as to right and amount and, hence, being no subject of jury consideration or jury assessment.

"In ordering partial re-trial this court acted on procedural and apparently discretionary authority of *Fort Wayne & Belle Isle R. Co.* v. *Wayne Circuit Judge,* 110 Mich 173; *Deffenbaugh* v. *Inter-State Motor Freight Corp.,* 254 Mich 180, 183; *In re Boyer's Estate,* 282 Mich 552; and *Zielinski* v. *Harris,* 289 Mich 381. These cases in present judgment prove 2 premises: One that a verdict of nominal damages is contrary to clear weight of the evidence when the latter shows clear right to modest if not substantial award, and the other is that the court itself should act toward correction of any such manifest injustice.

"The merits, if any, of the court's direct legal position—that the jury in clear case of wrongful death of a healthy little child may not as against legal implication of pecuniary loss find with finality no damages at all for pecuniary injury—are shown in the *Black Case,* and, as an example, *Willsen* v. *Metropolitan Street Railway,* 74 NYS 774."

The court's position is clear and it is clearly correct. The plaintiff has a right that the jury be informed unequivocally that, even upon the meager evidence available in these cases of an infant's death, the parent is entitled to a substantial award and that they are justified in giving it. No other conclusion is permissible under our Michigan law. We settled the matter, after early doubt, in *Black* v. *Michigan Central R. Co., supra.* That case went far beyond a mere matter of evidence. The "proofs" put in as to pecuniary loss were actually no proofs at all on that subject, as the term is ordinarily employed. What were they? First (p 573), "the age, calling, and condition of health of the father was given, and the age and condition of the mother." So far we find no proof of pecuniary loss. But the proofs did not stop here. The boy's age was shown and "it was also shown that the boy was healthy, intelligent, of an excellent disposition, and obedient to his parents." Is our pecuniary inquiry thus advanced? He was doubtless a fine lad. But, where is the language of dollars and cents, the "proof" of pecuniary loss? If this case can go to the jury, what theory takes it there? We are not left in doubt. " 'The law presumes the life of a minor child to be of value to his parent,' " says the Court (p 573), quoting *Parsons* v. *Missouri Pacific R. Co.,* 94 Mo 286, 296 (6 SW 464): " 'He (the parent) is necessarily injured by a wrongful act resulting in the death of such minor child.' " But what is to be the recovery? As to that, also, the Court is clear (p 574): " 'To compensate him for

this loss and this burden, the law allows the parent of such minor substantial damages.'" The quotation by our Court (p 574) from *City of Chicago* v. *Hesing, supra*, 207, is equally to the point: " 'The law implies a pecuniary loss, for which compensation, under the statute, may be given.'" Here, then, is our answer: The law implies the loss and allows substantial damages. The failure of the arithmetic will not defeat the parent; justice holds not a comptometer but scales and in those scales life has value.

If any doubt remains as to just what *Black* v. *Michigan Central R. Co., supra*, stands for, *Sceba* v. *Manistee Railway Co.*, 189 Mich 308 (LRA 1918C, 1090), makes it clear. The proofs submitted in the *Black Case* (which we have above outlined) were, we commented in the *Sceba Case* (p 320), "sufficient to authorize an award of substantial damages, and the Court, in    *    *    *    (the *Black Case*) refused to set aside a verdict of $1,500 damages."

And again we find the presumption of loss (p 322) :

"It has been held by many courts, including those cited in the *Black Case*, that the law presumes in the case of the death of a minor child by wrongful act, that there has been a loss for which compensation may be given under the statute."

Upon the authority above, in spite of the utter lack of dollars and cents proof, plaintiff in the case at bar was, nevertheless, entitled to an instruction (based on the *Black Case*) that the law presumes a loss under these circumstances, and that such proof as he had furnished "was sufficient to authorize an award of substantial damages." This he did not get.

The duty of the court itself in the conduct of a case and with respect to a jury verdict was phrased a half century ago by Mr. Justice Lamm of the Missouri supreme court, in words worthy of repetition:

"Considering the case from this point of view, it must not be lost sight of that a jury may not give any verdict it pleases. Its verdict is first subject to the trained judicial discretion of the trial judge, and his judicial discretion, so exercised upon the verdict, will not be interfered with on appeal, except it be unmistakably unwisely exercised. *Iron Mountain Bank* v. *Armstrong,* 92 Mo 265, 279 *et seq.* (4 SW 720, 725 *et seq.*); *First National Bank of Brunswick* v. *Wood,* 124 Mo 72, 76, 77 (27 SW 554); *Kuenzel* v. *Stevens,* 155 Mo 280, 285 (56 SW 1076); *McCloskey* v. *Pulitzer Publishing Co.,* 163 Mo 22, 33 (63 SW 99); and cases cited. The wise exercise of this judicial discretion on the part of circuit judge has always been encouraged by this court—a discretion exemplified by Justice Grier in his celebrated dictum that 'it takes 13 men in this court to steal a man's farm—12 in the box and 1 on the bench.'

"The trial judge stands peculiarly close to the fountain-head of legal justice. He is the high priest presiding at the very altar of the temple. To him it is given to hear the intonation of voice of a witness, to see his manner, his cast of countenance, the glance of his eye, the behavior of the jury, their intelligence, their attention and the whole network of small incidents creating an atmosphere about a case and tending possibly to a perverted result or otherwise, none of which can be preserved in the bill of exceptions and sent here, and in him, therefore, should exist the courage to prevent a miscarriage of right." *McCarty* v. *St. Louis Transit Co.,* 192 Mo 396, 401, 402 (91 SW 132, 133).

Such, indeed, was the action of the trial court in this case. The matter of a new trial rests in his discretion, and we will not interfere, save on abuse thereof. I find no such abuse. He, above all others, knows what went on in his court, what was said, what was done, what was asked and what was refused, and the atmosphere in which decision was reached. When he tells us under his oath and on his conscience,

*sua sponte,* that a new trial should be had because of his own errors, we are quick to support him and to commend him. Much is not clear in the cold print of the many cases reaching us. But he was there. We were not. This much, however, is clear: The verdict itself, of zero dollars and zero cents for damages, demonstrates that something was wrong. Whether it was the court's instructions, or lack of them, the alleged, and denied, argument to the jury attacking the lack of due care of the child's parents, or other error, we cannot tell. But the result is shocking to us and in this state of distress we need not probe too deeply for causes. The verdict speaks for itself.

The order should be affirmed. Costs to appellee.

Sharpe, J. (*dissenting*). The principal issue involved in this case may be stated as follows: Did the trial court abuse its discretion in granting a partial retrial? The order granting a partial retrial contains the following:

"In his argument to the jury defense counsel made a point of contributory carelessness on the part of the decedent's mother. This argument, despite the court's charge that the only question to be considered (aside from amount of pecuniary injury) was that of defendant's negligence, may have been carried into the jury room. If such assumption be correct then the verdict rests on the false premise of compromise because the mother's alleged carelessness could not have been proximately connected with the boy's death—neither could it have affected the father's right to damages for pecuniary injury.
* * *

"Defendant's negligence was the sole proximate cause, and consideration of precedent action or inaction of the mother should not under the court's instructions have entered jury deliberation, if it did so.

"If the verdict be attributed to alternative assumption that the jury decided per defense argument that the father by his only son's death sustained no pecuniary loss whatever, it stands equally indefensible.  The argument was that necessary deduction of modern-day cost of maintenance and education of a minor, from prospective worth if any of the minor's services, leaves a net loss."

The reason for granting a partial retrial is found in the trial court's opinion filed July 28, 1955, under Court Rule No 60 (1945):

"Assuming defendant had successfully moved, prior to instant application for leave to appeal, for dissolution of such *sua sponte* order this court undoubtedly and ultimately would be obliged to grant due motion for new trial by plaintiff addressed to any one of the following grounds:

"1. Failure in substantial accord with plaintiff's request 2 of jury instruction that defendant was guilty of actionable negligence.

"2. Failure of jury instruction complying substantially with plaintiff's request 6, the substance of which is the rule of implication of pecuniary loss and right to substantial damages as set forth in the *Black Case.**

"3. Failure of the court to eliminate from its instructions reference to or jury consideration of the funeral and burial expense, same having been stipulated as to right and amount and, hence, being no subject of jury consideration or jury assessment."

It is the rule that the granting of a new trial is discretionary with the trial court except in a case of clear abuse of such discretion.  In *Fort Wayne & Belle Isle R. Co.* v. *Wayne Circuit Judge,* 110 Mich 173, we held that the trial court has the discretionary power to set aside a verdict and order a new trial if it deems the award insufficient.  See, also, *Wheeler*

---

* See *Black* v. *Michigan Central R. Co.,* 146 Mich 568.—REPORTER.

v. *Jenison,* 120 Mich 422; *O'Brien* v. *Judge of Recorder's Court of Detroit,* 234 Mich 554; *Deffenbaugh* v. *Inter-State Motor Freight Corp.,* 254 Mich 180. In the case at bar the action was brought under CL 1948, § 691.581 *et seq.* (Stat Ann 1955 Cum Supp § 27.711 *et seq.*).   Section 2 of the statute (CL 1948, § 691.582 [Stat Ann 1955 Cum Supp § 27.712]) provides, in part, as follows:

"In every such action the court or jury may give such damages, as, the court or jury, shall deem fair and just, with reference to the pecuniary injury resulting from such death."

The rule relating to the granting or refusal to grant a new trial is not affected by the act under which plaintiff filed his declaration in the above case. In the case at bar the trial court was clearly of the opinion that the verdict of the jury was an injustice to the parties.   His reasons for granting a partial retrial as contained in his opinion and order constrains me to hold that his action in so doing was not an abuse of discretion.   I therefore concur in the result of the opinion filed by Mr. Justice Smith.

Boyles, J., concurred with Sharpe, J.

Black, J., took no part in the decision of this case.