WILSON v. MODERN MOBILE HOMES, INC.

DECISION OF THE COURT.

1. DEATH—ELECTROCUTION—DEFECTIVE HOUSE TRAILER.

Verdict and judgment for plaintiff· father, as personal representative for estate of 10-year-old daughter, in action for wrongful death from electrocution caused by defective wiring of house trailer is affirmed (CL 1948, §§ 691.581, 691.582).

SEPARATE OPINION.

T. M. KAVANAGH, C. J., and SOURIS, SMITH, and ADAMS, JJ.

2. SALES—BREACH OF WARRANTY—NOTICE.

*Notice of breach of warranty required to be given by the uniform sales act and relating to warranty contained in a contract of sale is not a condition precedent to action for breach of an implied warranty arising from a contract of sale (CL 1948, § 440.49).*

3. SAME—BREACH OF IMPLIED WARRANTY—NOTICE.

*It is unnecessary to submit matter of notice of breach of an implied warranty to jury in action arising from breach of warranty of contract of sale, since notice as to breach of implied warranty need not be given to seller as a condition precedent to bringing an action.*

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 833 *et seq.*
[2, 3, 14] 46 Am Jur, Sales § 714 *et seq.*
[4, 16, 19] 22 Am Jur 2d, Death §§ 128, 129, 170.
[5] 22 Am Jur 2d, Death § 147 *et seq.*
[6] 22 Am Jur 2d, Death § 123 *et seq.*
[7] 22 Am Jur 2d, Death § 254.
[8] 22 Am Jur 2d, Death §§ 148, 149, 261.
[9] 53 Am Jur, Trial § 824 *et seq.*
[10–12] 5 Am Jur 2d, Appeal and Error § 894.
[13, 21] 22 Am Jur 2d, Death §§ 135, 267; 39 Am Jur, Parent and Child § 80.
[15] 20 Am Jur 2d, Courts § 189 *et seq.*
[17] 22 Am Jur 2d, Death § 270.
[18] 22 Am Jur 2d, Death § 176.
[20] 46 Am Jur, Sales § 716.

4. DEATH—DAMAGES—REQUEST TO CHARGE—INSTRUCTIONS—PECUNI-
ARY VALUE OF LIFE.

> *Omission to give request to charge in action under the death act
> for loss of 10-year-old child that from any award given for
> companionship there must be deducted the cost of damages
> for expenses of birth, clothing, and food during period de-
> ceased had lived, and pecuniary value of companionship during
> same period, and that the money value of companionship must
> be based upon something obtainable in the open market held,
> not error, in view of instructions given permitting jury to con-
> sider funeral expenses, actual medical, surgical, and hospital
> expenses, and pecuniary, financial loss, and that jury should
> put a fair evaluation on the life of the deceased (CL 1948,
> §§ 691.581, 691.582).*

5. SAME—LOSS OF CHILD—DAMAGES—QUESTION FOR JURY.

> *A parent, through an action under the death act, may recover
> the cost of the acquisition of the society and comfort of a child,
> and a jury is capable of ascertaining such damages, fairly and
> equitably to all parties (CL 1948, §§ 691.581, 691.582).*

6. SAME—DAMAGES—PECUNIARY VALUE OF LIFE.

> *A jury in an action under the death act is required to compute
> the pecuniary loss suffered because of the taking of the life,
> the pecuniary value of a life being a compound of many
> elements and no instruction to subtract, add, or multiply values
> of companionship is necessary as the jury is to arrive at a
> determination as to the money value of a life by taking into
> consideration expenses and companionship as well as other
> relevant considerations introduced as evidence (CL 1948,
> §§ 691.581, 691.582).*

7. SAME—PROXIMATE CAUSE—HOUSE TRAILER—ELECTROCUTION.

> *Submission of question to jury as to whether an improper elec-
> trical cord had been supplied to purchaser by retailer of
> house trailer which had obviously been designed for a 3-wire
> polarized cord held, proper in action under death act, where
> testimony is disputed as to sufficiency of the cord furnished
> and which was in use when plaintiff's child was electrocuted
> (CL 1948, §§ 691.581, 691.582).*

8. SAME—REQUESTS TO CHARGE—INSTRUCTIONS—SPECULATION.

> *Trial court's failure to give defendant's requests to charge in
> action under death act that the jury is not to be governed
> by what an attorney does or does not want and that a verdict
> must not rest on conjecture or guess held, not error, where
> jury was instructed to rely only on evidence adduced in court
> and not to speculate (CL 1948, §§ 691.581, 691.582).*

9. SAME—ADDITIONAL INSTRUCTIONS.

*Trial court's instructions to jury in action under death act for electrocution of child by trailer sold plaintiff when jury requested additional instructions as "to the way that we would legally approach the question involved" that it should first ·determine the issue of breach of warranty, then negligence, then damages, without restating charge of intervening cause or proximate cause on warranty* held, *without reversible error, especially where defendant's attorney raised no objection on the subject at the conclusion of the explanation (CL 1948, §§ 691.581, 691.582).*

10. SAME—BURDEN OF PROOF—INSTRUCTIONS.

*Instruction relative to burden of proof of contributory negligence, when charge given in action under death act is considered as a whole, completely advised jury on the matter (CL 1948, §§ 691.581, 691.582).*

11. SAME—INSTRUCTIONS—PLEADINGS.

*Failure of trial court to charge that pleadings filed by a party in action under death act constitute an admission and remain a part of the evidence to be considered by the jury* held, *not reversible error, where charge, when considered as a whole, correctly stated the law applicable (CL 1948, §§ 691.581, 691-.582).*

12. SAME—INSTRUCTIONS.

*Instructions to jury in action under death act against trailer seller for electrocution of plaintiff's 10-year-old child, when considered as a whole, which correctly state the law applicable to the particular case and clearly define the issue* held, *not to contain reversible error, notwithstanding some sentences, considered independently of context, were objectionable (CL 1948, §§ 691.581, 691.582).*

### SEPARATE OPINION.
### O'HARA, J.

13. DEATH—DAMAGES—INSTRUCTION—MINORS—COMPANIONSHIP.

*Instruction in action under death act for loss of 10-year-old child that damages recoverable include the value of an individual member of a family as part of a functioning social and economic unit, mutual society and protection, companionship, love, and affection* held, *not error as within cases construing the act that have been acquiesced in by the legislature (CL 1948, §§ 691.581, 691.582). .*

14. SALES—BREACH OF WARRANTY—NOTICE. ·

*Notice of breach of warranty required to be given by the uniform sales act and relating to warranty contained in a contract of sale is not a condition precedent to action for breach of an implied warranty arising from a contract of sale (CL 1948, § 440.49).*

DISSENTING OPINION.

BLACK, J.

15. COURTS—OPINION—DISAVOWAL OF DECISION OF QUESTION—PRECEDENT.

*An opinion by the Supreme Court which expressly disavows decision of a particular question would constitute no precedent as against others who may choose to raise, save, and present the question said by the opinion as having been left undecided.*

16. DEATH—DAMAGES—INSTRUCTIONS.

*Instruction to jury in action under death act for loss of 10-year-old girl that in computing damages the jury should consider evidence as to amount of funeral expenses and money value of the life of the girl, including the expense of birth, food, clothing, medicines, instruction, nurture, and shelter, as well as companionship* held, *erroneous as to elements of damages (CL 1948, § 691.582).*

17. SAME—DAMAGES—PRESENT VALUE OF LOSS OF COMPANIONSHIP.

*Omission from charge to jury in action under death act for loss of 10-year-old girl that value of companionship lost and to be lost should be restricted to present value of such damages and limitation of such loss to 21 years* held, *not in accordance with rule of damages under the death act as permitted by certain opinion in recently decided cases (CL 1948, § 691.582).*

18. COURTS—PRECEDENTS—DEATH—DAMAGES—LOSS OF COMPANIONSHIP.

*A determination by the Supreme Court under the death act that an award of $14,000, as distinguished from $7,500 allowed to remain by trial court, was not excessive, does not constitute authority for allowing vast sums for loss of companionship under such act (CL 1948, § 691.582).*

DISSENTING OPINION.

KELLY, J.

19. DEATH—DAMAGES—INSTRUCTIONS.

*Instruction to jury in action under death act for loss of 10-year-old girl that in computing damages the jury should consider*

*evidence as to amount of funeral expenses and money value of the life of the girl, including the expense of birth, food, clothing, medicines, instruction, nurture, and shelter, as well as companionship* held, *erroneous as to elements of damages (CL 1948, § 691.582).*

20. Sales—Sufficiency of Notice to Seller—Evidence.
    *Trailer seller* held, *to have had sufficient notice of accidental electrocution of plaintiff's decedent, his daughter, by evidence showing the seller was notified by the State police on the afternoon it occurred and that the seller had its electrician make an inspection of the trailer on the following day.*

Dissenting Opinion.
Dethmers, J.

21. Death—Damages—Pecuniary Loss—Loss of Companionship.
    *Pecuniary loss resulting from the death of a minor child does not include solatium, loss of companionship, or other so-called sentimental loss when recovery is sought under the death act (CL 1948, §§ 691.581, 691.582).*

Appeal from Kent; Hoffius (Stuart), J. Submitted June 4, 1964. (Calendar No. 9, Docket No. 50,357.) Decided October 4, 1965.

Case by Harold W. Wilson, administrator of the estate of Jean Anne Wilson, against Modern Mobile Homes, Inc., a Michigan corporation, and Howard L. Veurink for damages for death of minor daughter by electrocution caused by defective wiring of house trailer. Verdict and judgment for plaintiff against defendant Modern Mobile Homes, Inc., and for defendant Veurink. Defendant corporation appeals. Plaintiff cross appeals. Affirmed.

*Warner, Norcross & Judd, Harold S. Sawyer,* and *Paul K. Gaston,* for plaintiff.

*Cholette, Perkins & Buchanan (Don V. Souter,* of counsel), for defendants.

T. M. KAVANAGH, C. J. Plaintiff, Harold W. Wilson, administrator of the estate of Jean Anne Wilson, deceased, instituted this suit in the Kent county circuit court under the wrongful death act[1] for damages resulting from the accidental electrocution of plaintiff's minor daughter.

The fatal accident occurred on July 12, 1960, when the daughter, Jean Anne, age 10, crawled under the Wilson trailer to retrieve a ball. Jean Anne Wilson thereafter came in contact with the ground and some part of the trailer, resulting in the child being electrocuted.

Plaintiff originally joined the manufacturer of the trailer, Gordon Hodson, doing business as Holly Coach Company, as a party defendant, but Hodson was dismissed as a defendant prior to trial. The suit was tried against the seller of the trailer, Modern Mobile Homes, Inc. (hereinafter referred to as Modern), and Howard L. Veurink, vice-president of Modern.

The amended declaration charged defendants with negligence in the first count and breach of implied warranty in the second count.

Testimony on trial of this case revealed Mr. Wilson purchased the trailer from Modern in May, 1959. An electric cord was furnished with the trailer by defendant Modern and less than a day later Mr. Wilson received a tingling sensation from the handle of the refrigerator. Wilson testified he telephoned Mr. Howard L. Veurink, vice-president of defendant Modern, and was told to turn the plug of the electric cord halfway over and that would eliminate the difficulty.

After having the trailer about two weeks, Wilson went to defendant Modern and talked to Howard

---

[1] CL 1948, §§ 691.581, 691.582 (Stat Ann 1959 Cum Supp §§ 27.711, 27.712).

Veurink about the shocks; Wilson was again told the same thing by Veurink as to turning the plug. Plaintiff testified he followed Veurink's advice and the rest of the summer employed the remedy as to turning the plug each time a tingling sensation was received from the trailer.

In the spring of 1960, Wilson had some trouble with metal on the trailer expanding and he again talked to Howard Veurink at Modern; Veurink then told Wilson he would send a factory man out to check the metal and electrical problems.

In the summer of 1960 Wilson took the trailer and his family to the McArthur trailer park at Big Pine Island Lake, Michigan. Wilson could not use the cord on the trailer supplied by defendant Modern and he used a plug given to him by Mr. McArthur.

On the morning of the accident, another trailer owner, while helping Mrs. Wilson connect a water hose, received an electrical shock. The neighbor asked Mrs. Wilson to unplug the electricity while he worked and suggested that she have it checked later. The neighbor testified he saw Mrs. Wilson thereafter connect the electricity again.

Plaintiff contends the trailer was defective in that a metal screw, placed in the side of the trailer in the original construction pierced one of the neutral electrical wires on the side of the trailer. Plaintiff further contends that the cords running from the electrical outlet at McArthur's trailer park to the side of the trailer were not polarized; that built into the side of the trailer was a three-way polarized plug which was designed for three-way polarization to the source of electricity; that the cord furnished by Modern, while having a three-way polarized receptacle at one end had only a two-way unpolarized plug on the other end.

Plaintiff made a two-wire cord, and on the day of the accident the aforementioned wire cord was con-

nected to the cord furnished by Modern to procure power.

Plaintiff further contends that on the day of the accident the two-way plug on the cord furnished by Modern was inserted in the receptacle on the cord made by Wilson and that the electric current ran through the neutral wire in the trailer which was pierced by the screw, causing a short which energized the skin of the trailer, and thus created the condition resulting in the electrocution of Jean Anne Wilson.

Defendant Modern was notified of the accident by the Michigan State Police on the afternoon it occurred.

On the trial Howard Veurink testified that the cord "was furnished because in most State parks and all State parks I know of, the only way you can plug in a trailer is with a two-way cord."

The jury returned a verdict against Modern in the sum of $25,000. Both parties agree that the aforesaid verdict had to be based upon either a breach of implied warranty as alleged in plaintiff's amended declaration, or on negligence by Modern in providing plaintiff with a two-wire cord attached to a three-wire polarized plug at one end and an ordinary wall plug at the other end.

Defendant Modern raises 14 questions on appeal, a substantial number of which allege error in the trial court's instructions. The principal questions for our determination are whether the trial court erred in ruling as a matter of law that sufficient notice had been given to defendant Modern and whether the trial court erred in not submitting the question of notice to the jury. These two questions are answered by the majority opinion, written by Justice BLACK, in *Piercefield* v. *Remington Arms Company,* 375 Mich 85, 100, where the Court said:

"For the same reasons as were made to appear in *Greenman* v. *Yuba Power Products, Inc.*, 59 Cal 2d 57, 60–62 (27 Cal Rptr 697, 699–701, 377 P2d 897, 899–901), I would hold that the giving of notice under said section 49[2] is not a prerequisite to institution and maintenance of this plaintiff's suit. Said section 49 deals with the rights of the parties to a contract of sale. It does not require that notice must be given of breach of a warranty that arises by legal implication distinct from a contract of sale. 'Such warranties are not imposed by the sales act, but are the product of common-law decisions that have recognized them in a variety of situations.' (*Greenman*, at 61 [27 Cal Rptr 699, 377 P2d 899].)"

The Court then proceeded to hold (p 100):

"Since the duty is not imposed by the terms of the contractual relationship, the requirement of notice under the uniform sales act has, in the better view if not in the majority view, been dissipated."

See, also, *Browne* v. *Fenestra, Inc.*, 375 Mich 566. Appellant assigns error to the trial court in failing to charge the jury, though requested, that from any award given for companionship, there must be deducted the cost of damages for expenses of birth, clothing, food, et cetera, during the period that the deceased lived, and that the jury must deduct therefrom the pecuniary value of the companionship received during the same period and contends the trial court's failure to give defendant's request to charge relating to the foregoing resulted in an excessive verdict. Appellant further contends the trial court erred in failing to instruct the jury that the money value of companionship must be based upon something obtainable in the open market, and that the court erred in charging that the jury must consider

---

[2] Reference is to CL 1948, § 440.49 (Stat Ann 1959 Rev § 19.289), now in uniform commercial code, PA 1962, No 174, § 2607 (CL 1948, § 440.2607 [Stat Ann 1964 Rev § 19.2607]).—Reporter.

the money value of the life of the deceased and put a fair evaluation on this life.

An analysis of the trial court's instructions relative to the damages recoverable in the instant controversy does not indicate any reversible error. Appellant would have this Court overrule our decision in *Wycko* v. *Gnodtke*, 361 Mich 331. A majority of this Court affirmed *Wycko* v. *Gnodtke, supra,* in *Currie* v. *Fiting*, 375 Mich 440.

The trial court instructed the jury that funeral expenses, actual medical, surgical and hospital expenses, and the pecuniary, financial loss, if any, sustained by the parents, may be given consideration in evaluating plaintiff's decedent's damages. Defendant enumerates several reasons why this Court should not follow the holding of *Wycko, supra,* and should require deduction of the companionship, society and comfort received during the lifetime of the decedent, as well as the cost of procuring the companionship.

We again reaffirm today the holding of *Wycko* that a parent may properly recover the cost of the acquisition of such society and comfort, and that a jury is capable of ascertaining such damages, fairly and equitably to all parties.

A jury in a death case, as stated in *Wycko, supra,* is required to compute the pecuniary loss suffered because of the taking of the life. The pecuniary value of the life is composed of "a compound of many elements." No instruction to subtract, add, or multiply is necessary. Juries are to arrive at a determination as to the money value of a life, taking into consideration expenses and companionship as well as other relevant considerations introduced as evidence.

We conclude from a reading of the charge that the trial court correctly instructed the jury as to the law of this jurisdiction concerning damages.

Appellant contends error by the trial court in failing to charge the jury, though requested, that if the jury found it was necessary to have a two-pronged plug in order to procure power for the use of the trailer at State parks, this could not be a proximate cause of the death of plaintiff's decedent. Appellant further charges error to the trial court in failing to grant defendant's motion for directed verdict on the issue of negligence in furnishing a two-wire cord. Appellant's requests relating to the aforesaid errors would have the court instruct the jury as a matter of law that the furnishing of the two-pronged plug could not have been a proximate cause of plaintiff's decedent's death, and defendant could not be guilty of any negligence by reason of furnishing the two-pronged plug.

The evidence relating to the furnishing of an improper electrical cord to the trailer was in dispute. Appellee contends that defendant Modern was negligent in furnishing an improper electrical cord to the trailer in that although it was obvious the trailer was designed for a three-wire polarized cord, the plug at one end of the cord furnished by the defendant Modern was a two-way unpolarized plug.

Defendant Modern admittedly knew that at least some public parks, where presumably the trailer was going to be used, could not use the electrical cord furnished. The jury may well have inferred, if Modern had furnished a polarized cord, this accident would not have occurred. The manufacturer had designed the trailer to be connected with a three-wire system. Presumably, Modern knew this. If so, this is what defendant Modern should have furnished. The testimony is disputed as to whether if the cord furnished by appellant had contained a three-way polarized receptacle at one end which would fit into the side of the trailer and a two-way polarized for the other, which would have fit into

the outlet at McArthur's landing, this accident would not have occurred. Under the *disputed facts* in this record, the trial court correctly submitted these questions to the jury for determination.

Appellant contends error in the trial court's failure to charge defendant's requests 3 and 25, that the jury is not to be governed by what an attorney does or does not want, and that a verdict must not rest upon conjecture or guess. Reading the charge as a whole, it is evident that they were instructed to rely only on evidence adduced in court and not to speculate. The substance of defendant's requests 3 and 25 was given by the court in his own words. We find no error as to these instructions.

Appellant contends error by the trial court in failing to restate the charge of intervening cause or proximate cause on warranty when the jury requested additional instructions. The additional instructions were not on the subject of warranty but rather "to the way that we would legally approach the question involved." The court instructed the jurors to first determine the issue of breach of warranty, then negligence, then damages. It is to be noted that at the conclusion of the explanation by the trial judge to the jury the counsel for defendant raised no objection on this subject. We find no error in this regard.

Appellant further contends that the court erred in failing to give defendant's charge number 4 — that while the burden of proving negligence on the part of plaintiff is upon defendant, this does not mean that defendant must necessarily produce evidence to this effect. The charge as a whole completely advised the jury of the proper burden of proving negligence on the part of plaintiff.

Appellant also asserts error in failure of the trial court to charge that pleadings filed by any party

constitute admission and remain a part of the evidence to be considered by the jury.

We find the entire charge of the trial court properly presented the theories of both parties, the law applicable to the case, and we find no reversible error in the instructions of the trial court.

In *Bouma* v. *Dubois,* 169 Mich 422, 434, quoted with approval in *Gilson* v. *Bronkhorst,* 353 Mich 148, 160, this Court held:

" 'Where the charge of the court, taken as a whole, correctly states the law as applicable to the particular case, and clearly defines the issue, the fact that sentences are objectionable, when considered independent of the context, does not constitute reversible error.' "

The verdict is affirmed. Plaintiff shall have costs.

SOURIS, SMITH, and ADAMS, JJ., concurred with T. M. KAVANAGH, C. J.

O'HARA, J. (*concurring*). So long as the language of *Wycko* v. *Gnodtke,* 361 Mich 331, remains unmodified, that long we shall continue to have the trial bench of our State compelled to give the substance of the instruction given by the able trial judge in the case at bar. Attend the language in *Wycko,* characterizing the former definition of "pecuniary" loss (pp 337–340):

"Loss meant only money loss, and money loss from the death of a child meant only his lost wages. All else was imaginary. The only reality was the king's shilling. * * * That this barbarous concept of the pecuniary loss to a parent from the death of his child should control our decisions today is a reproach to justice. * * * We now reject, * * * the child-labor measure of the pecuniary loss suffered through the death of a minor child.

&ast; &ast; &ast; The pecuniary value of a human life is a compound of many elements. &ast; &ast; &ast; *This value is the value of mutual society and protection, in a word, companionship."* (Emphasis supplied.)

Said the trial judge in part here:

"So an individual member of a family has a value to others as part of a functioning social and economic unit. *This is the value of mutual society and protection; in other words, companionship, love and affection."* (Emphasis supplied.)

It seems to me the trial judge did exactly what he said he did:

"I have given you the rule as laid down by the Supreme Court."

I can find no error in the charge, but I write separately to indicate my agreement, that *Wycko* be reconsidered as suggested by Mr. Justice KELLY and Mr. Justice BLACK. My concurrences in the application of the extant rule was based upon the principle of legislative acquiescence.

In view of the majority holding in *Piercefield* v. *Remington Arms Co., Inc.,* 375 Mich 85, 100, quoted by the Chief Justice requiring no notice of breach of warranty from a contract of sale, the question of the sufficiency of notice in this case would seem to me to have been settled. I do not read the Chief Justice's opinion to hold that the notice to Mobile was sufficient, but rather that no notice is required. I concur in the result reached by the Chief Justice.

BLACK, J. (*dissenting*). Solely for future reference, I make specific note of these facts.

*First:* In *Currie* v. *Fiting,* 375 Mich 440, four Justices standing for affirmance ruled that the effect

of sections 114 and 115, of chapter 2 of the probate code of 1939,* on the recovery and distribution of damages for "pecuniary injury," was not before the Court. To repeat what the four attested in such regard (p 453 of report):

"But, it is argued, even if the wrongful death statute permits recovery, the probate code, PA 1939, No 288, ch 2, § 115 (CL 1948, § 702.115 [Stat Ann 1962 Rev § 27.3178(185)]), does not, and the probate code, it is contended, is controlling. We do not regard this action, brought under the wrongful death statute, as being governed by the probate code. In any event, that question is not before us in this case and we decline to pass upon it at this time."

The floodgates of unlimited recovery and distribution of damages for loss of companionship, allegedly suffered by nondependents as well as dependents in statutory death cases, were opened in consequence only for administrators Currie and Reisig (*Reisig* v. *Klusendorf,* 375 Mich 519). The Court's 5–3 vote for affirmance of *Currie* and *Reisig* is, in view of the express disavowal quoted above, no precedent as against others who may choose to raise, save, and present the question said by Justices ADAMS, KAVANAGH, SOURIS, and SMITH, as having been left undecided.

*Second:* No part of the trial judge's reviewed charge on the subject of damages, for statutory pecuniary injury, appears in the present majority opinion. Here is the connected charge on that subject:

"In this particular case in this regard, the Supreme Court has recently given us somewhat of a measure

---

* See PA 1939, No 297 (CL 1948, § 691.582; current citation CLS 1961, § 600.2922 [Stat Ann 1962 Rev § 27A.2922]); PA 1939, No 288 (CL 1948, §§ 702.114, 702.115 [Stat Ann 1962 Rev §§ 27.3178 (184), 27.3178(185)]). For relevant amendments made after submission of this case, see PA 1965, No 146, amending CLS 1961, § 600.2922 and PA 1965, No 181, amending CL 1948, § 702.115.

as to what damages you are to consider. (If) You shall find that the plaintiff in this case is entitled to a verdict, I instruct you that it is your duty to give to the plaintiffs such damages in a sum which will reasonably compensate the mother and father of Jean Anne Wilson. In computing your damages, you shall consider evidence introduced as to the amount of funeral expenses which plaintiff sustained. In addition, you must consider the money value of the life of Jean Anne Wilson. Some of you might feel it is impossible to value the life of a 10-year-old girl. However, you cannot shirk this difficult problem of evaluation. A life has been taken, and if you find that plaintiff is entitled to a verdict, it is your duty as best you can to put a fair valuation on this life. The money, life — value of a human life is a compound of many elements. (Just) As with respect to a manufacturing plant, or industrial machine, value involves the cost of acquisition, emplacements, upkeep, maintenance, service, repair and renovation, so in our case, you must consider the expense of birth, of food, of clothing, of medicines, of instructions, or nurture, and shelter. And it is for that reason the court has permitted the plaintiff to testify as to the cost of bringing up the child from birth up to the age of 10 years old at the time of her death, and also as to the care that has been given to this child. Moreover, just as an item of machinery forming a part of a functioning industrial plant has a valuation over and above that of a similar item in a showroom awaiting purchase, so an individual member of a family has a value to others as part of a functioning social and economic unit. This is the value of mutual society and protection; in other words, companionship, love, and affection. The human companionship thus afforded has a definite substantial and ascertainable pecuniary value, and its loss forms a part of value of the life you seek to ascertain. So, in this case it is difficult to give you any exact rule, but I have given you the rule

as laid down by the Supreme Court in order to
determine a value, if you reach that point in your
consideration of this case."

*Wycko* v. *Gnodtke,* 361 Mich 331, strained to its
headiest height of monetary intoxication, justifies
no final jury argument, by a trial judge as above,
in any — yes, any — wrongful death case.  I think
it only fair that the profession be advised, by direct
quotation of the above, as to what (should the opin-
ion proposed for affirmance receive majority sup-
port) will be expected of the circuit judge when —
in a wrongful death case — he goes about prepara-
tion of damage instructions.

*Third:* I find in the trial judge's charge no direc-
tion to ascertain the *present* value of damages for
companionship lost and to be lost by these surviving
parents.  And isn't the quotation below, of the
judge's charge, a wee bit offensive to what the
Brethren standing for affirmance of *Currie* and
*Reisig* wrote?  Surely *Wycko* has sent some lawyers
and judges rocketing into the wild yonder of *carte
blanche* space.  Now look at the following additional
jury instruction, given in this case of Wilson after
commencement of jury deliberation:

"(The jury returned to the courtroom.)
"Ladies and gentlemen of the jury, I have asked
that you be brought back, because I don't think you
had more than turned the door handle when both
attorneys and myself realized there were a couple
of things I failed to give to you.  One was a ruling
that I made during the course of argument, and I
think I should give you instructions on it.  I instruct
you, that if you find for the plaintiff, you may not
award any damages under the death act.  There can
be no recovery to the plaintiff beyond the time
that the deceased would have reached the age of
21 years.  So, that damages, if you find for the
plaintiff, would be limited only to that amount.  It

would also be, of course, pecuniary damages which the parents, Mr. and Mrs. Wilson, have suffered by reason of this loss."

Justice KELLY was right when, in *Reisig* v. *Klusendorf,* 375 Mich 519, 524, he said *Wycko* should be reconsidered. *Wycko* has grown since it was handed down to bizarre if not monstrous proportions. Neither the legislature nor the profession were warned that instructions to juries — as above quoted — were going to be made on strength of *Wycko's* determination that $14,000 awarded for pecuniary injury, distinguished from $7,500 for such injury, was not excessive.

When today's majority, moving directly as it does from *Currie* and *Reisig* to this case of Wilson, is willing to declare: "We conclude from a reading of the charge that the trial court correctly instructed the jury as to the law of this jurisdiction concerning damages", it is perfectly clear that nothing more need be said by way of dissent.

I would reverse for erroneous and prejudicial jury instruction.

KELLY, J. (*dissenting*).     I agree with Justice BLACK that we should reverse because of erroneous and prejudicial jury instruction.

I agree with Chief Justice KAVANAGH that the trial court did not err in ruling as a matter of law that sufficient notice had been given to defendant Modern, but base my conclusion on the evidence which established that defendant Modern was notified of the accident by the Michigan State police on the afternoon it occurred and that Modern had its electrician make an inspection of the trailer on the following day.

I vote for reversal.

DETHMERS, J. (*dissenting*). Thinking still, as I did when signing Mr. Justice CARR's minority opinion in *Wycko* v. *Gnodtke,* 361 Mich 331, and for the reasons therein stated, that the so-called wrongful death act, under which this action was brought, limits recovery to the pecuniary loss resulting from the death and does not permit recovery for solatium, loss of companionship, or other so-called sentimental loss, I favor reversal because the trial court's instructions to the jury here permitted it thus to award damages for that which the statute, so viewed, does not allow.