SMITH v CITY OF DETROIT

SWARTHOUT v BEARD

OPINION OF THE COURT

1. DEATH—WRONGFUL DEATH—DAMAGES—SOCIETY AND COMPANION-
SHIP.

The measure of damages in wrongful death cases does include
loss of society and companionship; the Michigan Supreme Court
was incorrect when it held to the contrary (MCLA 600.2922).

REFERENCES FOR POINTS IN HEADNOTES

[1, 15] 22 Am Jur 2d, Death § 135.
"Sentimental" losses, including mental anguish, loss of society, and
loss of marital, filial, or parental care and guidance, as elements
of damages in action for wrongful death, 74 ALR 11.
[2] 22 Am Jur 2d, Death § 1.
[3] 22 Am Jur 2d, Death § 183.
Division among beneficiaries of amount awarded by jury or received
in settlement upon account of wrongful death, 171 ALR 204.
[4] 22 Am Jur 2d, Death § 13.
Measure of damages for death in action for benefit of decedent's
estate, 163 ALR 253.
[5, 6] 22 Am Jur 2d, Death § 2 et seq.
[7] 22 Am Jur 2d, Death § 10.
Survival of action or cause of action for wrongful death against
representative of wrongdoer, 171 ALR 1392.
[8, 24] 22 Am Jur 2d, Death § 119 et seq.
[9] 22 Am Jur 2d, Death § 191.
Joinder of cause of action for pain and suffering of decedent with
cause of action for wrongful death, 35 ALR2d 1377.
[10] 22 Am Jur 2d, Death § 267.
[11] 50 Am Jur, Statutes § 223.
[12] 22 Am Jur 2d, Death § 6.
[13] 22 Am Jur 2d, Death § 121.
[14] 22 Am Jur 2d, Death § 29.
[16] 22 Am Jur 2d, Death §§ 26, 127.
[17] No references.
[18–20] 5 Am Jur 2d, Architects § 25.
[21] 22 Am Jur 2d, Death §§ 26, 230, 246.
[22] 45 Am Jur 2d, Interest and Usury §§ 60, 97.
[23] 4 Am Jur 2d, Appeal and Error § 292 et seq.

2. DEATH—WRONGFUL DEATH—COMMON LAW.

The common law provided no cause of action for wrongful death.

3. DEATH—WRONGFUL DEATH—STATUTES—BENEFICIARIES—DESCENT AND DISTRIBUTION.

Before 1939, the original statute providing a cause of action for wrongful death did not treat the amount recovered as an asset of decedent's estate but was amended to make the recovery an asset to be distributed among the beneficiaries, not according to damage suffered but according to the proportion fixed by the statute of descent and distribution (1848 PA 38; 1873 PA 94).

4. DEATH—SURVIVAL ACT—STATUTES—ASSETS OF DECEDENT'S ESTATE—PERSONAL REPRESENTATIVE—WRONGFUL DEATH.

The survival act, before 1939, gave the personal representative of a decedent, by survival, a right of action for injuries suffered by the decedent before his death and the damages recovered became an asset of decedent's estate; it did not create a new cause of action but prevented lapsing of an old one (1846 RS, chap 101, § 5, as amended by 1885 PA 113).

5. DEATH—WRONGFUL DEATH—SURVIVAL ACT—REMEDIES—JOINDER.

The administrator of an estate, before 1939, might join a count for wrongful death with a count under the survival act so as to avoid the peril of pursuing the wrong remedy, but recovery under either count excluded recovery under the other (1873 PA 94; 1846 RS, chap 101, § 5, as amended by 1885 PA 113).

6. DEATH—WRONGFUL DEATH—STATUTES—AMENDMENT.

Amendment of the wrongful death act in 1939 combined in one action the formerly distinct remedies for wrongful death and for injuries resulting in death for which the action had survived, eliminated common-law remedies, provided for recovery for specific expenses of the decedent's estate and pain and suffering of the decedent as well as the pecuniary loss to the surviving spouse and next of kin, and repealed the survival act to the extent it was inconsistent with the wrongful death act (1939 PA 297, §§ 1–3).

7. STATUTES—SURVIVAL ACT—WRONGFUL DEATH ACT—AMENDMENT.

Statutory survival of actions remained in force after amendment of the wrongful death act in 1939 whether the death was of the injured party or of the tortfeasor (1939 PA 297).

8. DEATH—WRONGFUL DEATH—RECOVERY—PECUNIARY LOSS—COMPANIONSHIP.

Recovery of losses for wrongful death is limited by statutes to

pecuniary losses, the actual money value of life, which exclude
sorrow and anguish but include food, clothing, shelter, and
companionship (MCLA 600.2922).

9. DEATH—WRONGFUL DEATH—EXCLUSIVE REMEDY—CONSORTIUM.

Action under the wrongful death act by a decedent's personal
representative is the exclusive remedy where the decedent was
killed by wrongful act and his wife does not have a separate
cause of action for loss of consortium against the tortfeasor who
killed her husband, as she would have if he were only injured
(MCLA 600.2922).

10. DEATH—WRONGFUL DEATH—PECUNIARY LOSS—JURY—INSTRUCTION
TO JURY.

A jury in a wrongful death action is required to ascertain the
pecuniary loss suffered because of the taking of a life by
considering expenses and companionship and other relevant
evidence, without instructions to add, subtract, or multiply.

11. STATUTES—CONSTRUCTION—LEGISLATIVE ACQUIESCENCE—REENACT-
MENT.

Where the basic provisions of a statute have been construed by
the courts and these provisions are subsequently reenacted, it
may be assumed that the Legislature acted with knowledge of
the judicial construction and that it intended the reenacted
statute to carry that construction with it.

12. DEATH—WRONGFUL DEATH—PECUNIARY LOSS—COMPANIONSHIP—
STATUTES—CONSTRUCTION.

Construction of wrongful death statute by Supreme Court allow-
ing recovery for loss of society and companionship as a pecuni-
ary loss must be presumed to have been adopted by the Legisla-
ture when it reenacted the statute without substantial change
after the series of decisions developing that construction
(MCLA 600.2922).

13. DEATH—WRONGFUL DEATH—COMPANIONSHIP—DEPENDENTS—STAT-
UTES.

Allowing damages for loss of companionship as a pecuniary loss
in an action for wrongful death does not conflict with the
provision in the probate code for distribution of the proceeds to
dependents of the decedent, because dependency upon another
person may arise out of companionship (MCLA 600.2922; 1948
CL 702.115).

14. DEATH—WRONGFUL DEATH—DEPENDENCY—NEXT OF KIN—QUESTION OF FACT.

Dependency is to be determined by the facts and does not necessarily exist between next of kin.

15. DEATH—WRONGFUL DEATH—SPOUSE—NEXT OF KIN—COMPANIONSHIP.

Life has value not only to the person deprived of its enjoyment by a wrongful act, but also to the spouse and next of kin who have lost those benefits of association summarized as companionship.

16. DEATH—WRONGFUL DEATH—DAMAGES—QUESTION OF LAW.

A jury may assess damages for pain and suffering of decedent while he was alive, but where a decedent was instantaneously killed by wrongful act and the expenses of decedent's estate are stipulated, there is no question for a jury to consider, where the next of kin of decedent only claim pecuniary loss because of loss of companionship, if the measure of damages adopted by the Supreme Court in wrongful death actions excludes companionship as a compensable pecuniary loss.

17. STATUTES—WRONGFUL DEATH ACT—INTERPRETATION—REENACTMENT—LEGISLATIVE ACQUIESCENCE.

Repassage by the Legislature of the wrongful death act in 1965 without change indicated legislative acquiescence of the Michigan Supreme Court's interpretation of that statute (MCLA 600.2922).

18. CONTRACTS—ARCHITECTS—PERFORMANCE—EXCAVATIONS.

An architect who was contractually bound to be the representative of the owner of premises had the duty to supervise the manner in which a general contractor and/or the excavating subcontractor made an excavation where he was contractually bound to inspect with authority to stop the work and to use his powers under a building contract to enforce faithful performance.

19. CONTRACTS—ARCHITECTS—EXCAVATIONS—SAFETY OF EMPLOYEES—DANGEROUS CONDITIONS.

An architect had the authority to enforce the proper execution of a contract between the owner of premises and the general contractor to put in footings for a building and this included the general contractor's obligation to provide for the safety of employees where the architect was paid a fee to supervise the general construction, the dangerous condition of the wall of an

excavation on the premises was brought to the architect's attention, and he had authority to stop the work and make the necessary correction.

20. NEGLIGENCE—ARCHITECTS—DIRECTED VERDICT—EVIDENCE—REASONABLE CARE—PROXIMATE CAUSE—EXCAVATIONS.

Denial of defendant-architect's motion for directed verdict at the close of plaintiff's proofs was not erroneous in an action charging that the architect's negligence caused the death of a general contractor's employee when an excavation wall caved in because the evidence was sufficient to establish a *prima facie* case of negligence and the issues of due care, duty, and breach were factually doubtful and all reasonable men would probably not agree where a favorable-to-plaintiff view of the evidence established that 20% of the architect's fee was specifically allocated for the supervision of the project, he had authority to stop work to enforce any provisions of the contract between the owner and the general contractor or to enforce safety requirements, one of the provisions to be enforced by him was the maintenance of the excavation in a safe condition, he had actual knowledge of the dangerous condition of the wall, sufficient time and authority to effect a correction of the condition, knowledge that employees were working in the area of the wall, were in the zone of peril and injury could be foreseeable; there was sufficient evidence from which a jury could reasonably infer that the architect did not meet the rule that reasonable care should be exercised by a person of ordinary prudence' under all the circumstances in view of the probable danger of injury and could conclude that the architect's failure to act constituted actionable negligence and was a proximate cause of the resulting death.

21. DEATH—WRONGFUL DEATH—DAMAGES—CONSCIOUS PAIN AND SUFFERING—EVIDENCE.

Determination, by the trial court in a wrongful death action, that there was not sufficient evidence of conscious pain and suffering on the part of a decedent workman to allow the jury to consider this as a factor in assessing damages was supported by the record where there was no testimony concerning whether death was instantaneous, whether the decedent was rendered unconscious, suffocated, or what was the direct cause of death.

22. INTEREST—JUDGMENT—INSTRUCTIONS—STATUTES.

No instruction to the jury for the amount of interest to be added to a money judgment in a civil action is required since a statute governs the adding of interest (MCLA 600.6013).

23. Appeal and Error—Cross-Appeal—Delayed Cross-Appeal—Court Rules.

> Michigan Supreme Court should decline to deal with an issue raised in a cross-appeal filed more than 60 days after leave to appeal was granted because this was a clear violation of the court rule which provides that a cross-appeal may be filed within 20 days after service upon the appellee of notice of the order granting application for leave to appeal and no exculpatory reason has been advanced by the defendant for the delay (GCR 1963, 853.2[5]).

### Dissenting Opinion

Black, T. E. Brennan, and T. G. Kavanagh, JJ.

24. Death—Wrongful Death—Damages—Pecuniary Damages—Judgments.

> *Plaintiff in a wrongful death action has the right to recover "pecuniary damages"; all damages are pecuniary damages; damages verdicts are always expressed in dollars and cents and they result in money judgments.*

Appeal from Wayne, John P. Spires, J., and from Court of Appeals prior to decision. Submitted September 6, 1972. (No. 7 September Term 1972, Docket No. 51,164.) Decided November 29, 1972.

Complaint by Brunson Smith, as special guardian of the estate of Gary Smith, deceased, against the City of Detroit for damages for wrongful death. Motion *in limine* granted precluding plaintiff proving damages for loss of society and companionship. Plaintiff appealed to the Court of Appeals on leave granted. Plaintiff appealed to the Supreme Court for leave to appeal prior to decision by the Court of Appeals. Leave granted. Defendant cross-appeals. Reversed and remanded for trial.

Appeal from Court of Appeals, Division 3, Fitzgerald, P. J., and Holbrook and Bronson, JJ., reversing and remanding Gratiot, Leo W. Corkin, J.

Submitted September 8, 1972. (No. 8 September Term 1972, Docket No. 53,470.) Decided November 29, 1972.

33 Mich App 395 reversed.

Complaint by Arlen Swarthout, administrator of the estate of Leonard F. Clark, deceased, against Leland Beard and Lewis J. Sarvis for damages for wrongful death. Nordstrom-Myers, Inc., added as third-party defendant. Judgment of dismissal without prejudice for Nordstrom-Myers, Inc. Judgment of no cause of action against defendant Beard. Judgment on a jury verdict against defendant Sarvis. Defendant Sarvis appealed to the Court of Appeals. Plaintiff cross-appealed to the Court of Appeals. Reversed and remanded on the issue of damages. Plaintiff appeals. Defendant Sarvis cross-appeals. Reversed and remanded for entry of judgment on verdict.

*Leonard C. Jaques (Jerome G. Quinn,* of counsel), for plaintiff Smith.

*Michael M. Glusac,* Corporation Counsel, and *John F. Hathaway* and *Maureen P. Reilly,* Assistants Corporation Counsel, for defendant City of Detroit.

*van Benschoten & van Benschoten, P. C.,* for plaintiff Swarthout.

*Early, Starbuck & Lennon (Carl H. Reynolds,* of counsel), for defendant Sarvis.

SWAINSON, J. Both of these cases involve the issue of the validity of the *Breckon* decision[1] in

[1] *Breckon v Franklin Fuel Co,* 383 Mich 251 (1970).

wrongful death actions. They have been consolidated for purposes of this opinion because they involve basically the same issues.

## *SMITH v CITY OF DETROIT*

On April 28, 1968, nine-year-old Gary Smith was killed when he fell off a playground apparatus in an upside down position, the apparatus then rolled on top of his head crushing his skull. On February 26, 1970, plaintiff commenced an action under the wrongful death act[2] against the City of Detroit contending that the city was negligent and grossly negligent in the maintenance of the toys at the city's playground where the accident occurred and further that the toys constituted a nuisance. Plaintiff moved that the trial, which was scheduled for March, 1972, be adjourned until after April 1, 1972 so that plaintiff could prove damages under 1971 PA 65 which specifically permits the recovery of pecuniary damages for loss of society and companionship in wrongful death actions. The trial court granted this motion and trial was set for May 15, 1972. Prior to the commencement of the trial, defendant moved *in limine* to preclude plaintiff from proving damages provided by that amendment and sought to limit proof of damages to only items permitted under *Breckon v Franklin Fuel Co,* 383 Mich 251 (1970). Under *Breckon,* pecuniary damages for loss of society and companionship were not recognized. The trial court granted defendant's motion to limit proofs and also denied plaintiff's motion for a stay of proceedings pending appeal. Plaintiff thereupon filed an application for leave to appeal and a motion for stay of proceedings in the Court of Appeals. These motions were

---

[2] MCLA 600.2922; MSA 27A.2922.

granted by the Court of Appeals on May 19, 1972. On June 1, 1972, plaintiff filed application for leave to appeal with our Court prior to disposition by the Court of Appeals. We granted leave to appeal. 387 Mich 791.

## SWARTHOUT v BEARD

Plaintiff's decedent, Leonard Clark, was killed on July 29, 1963 when an excavation caved in on him. He was working in the excavation as an employee of Nordstrom-Myers, Inc., the general contractor putting in footings for the library building at Alma College. Plaintiff's administrator filed a complaint alleging wrongful death[3] on November 4, 1963. An amended complaint was filed on January 28, 1966 charging negligence against Leland Beard, d/b/a/ Beard's Welding and Erection Company, the excavator, and Lewis J. Sarvis, the architect, as original defendants. Nordstrom-Myers, Inc. was subsequently impleaded as a third party defendant. The trial court dismissed the action against Nordstrom-Myers without prejudice on the theory of workmen's compensation immunity. A jury trial resulted in a verdict of no cause of action against defendant Beard. A verdict of $25,000 was returned against the architect, Lewis J. Sarvis. The Court of Appeals affirmed the trial court as to the finding of liability as against the defendant Sarvis, but remanded for a new trial to determine damages in light of *Breckon.* 33 Mich App 395. We granted leave to appeal. 387 Mich 770.

Several issues are raised by the parties on this appeal. Two issues are common to both cases.

I. Whether pecuniary damages for loss of com-

---

[3] MCLA 600.2922; MSA 27A.2922.

panionship was a proper element of damages under the wrongful death act before the 1971 amendment?

II. Whether the 1971 amendment to the death act is retroactive?

In the *Smith* case the city filed a cross-appeal and raised the following issue:

III. Whether the governmental immunity statute of 1970[4] should be applied retrospectively?

In the *Swarthout* case plaintiff raised the following issues on appeal:

IV. Whether the question of interest from the date of death to the date of the verdict should have been submitted to the jury?

V. Whether the question of damages for conscious pain and suffering should have been submitted to the jury?

Defendant in the *Swarthout* case raises the following issues on appeal:

VI. Whether the architect had the duty to supervise the manner in which the general contractor and/or the excavating subcontractor made the excavation?

VII. Whether the architect had a duty to protect the workmen of the general contractor working in the excavation and stop the work?

VIII. Whether the trial court erred in denying defendant's motion to dismiss at the close of plaintiff's proofs since no evidence of the professional standards violated was submitted by the plaintiff?

The issue of loss of companionship as an element of damages has been before this Court on numerous occasions in recent years.[5] In *Wycko v*

---

[4] 1970 PA 155; MCLA 691.1401 *et seq.;* MSA 3.996(101) *et seq.*

[5] *Courtney v Apple,* 345 Mich 223 (1956); *Wycko v Gnodtke,* 361 Mich 331 (1960); *Burns v Van Laan,* 367 Mich 485 (1962); *Currie v*

*Gnodtke,* 361 Mich 331 (1960), our Court upheld a
jury award of $14,000 under the wrongful death
act for the death of a 14-year-old boy. The Court,
in the course of its opinion, overruled the measure
of damages as formulated by the Court in *Court-
ney v Apple,* 345 Mich 223 (1956). The Court in
*Courtney* had stated (p 232):

"The foregoing cases and others of like import indi-
cate the interpretation that this Court has placed on
the provisions of the death act here involved. In an
action to recover damages for the negligent killing of a
young child the trier of the facts is required, under the
statute, to determine the difference between probably
contributed earnings, during minority, to a parent, and
the cost of maintaining and educating such child until
majority."

The Court in *Wycko* traced the history of the
wrongful death act in its interpretation in *Court-
ney* back to Lord Campbell's act.[6] Justice SMITH
pointed out concerning the measure of damages (p
335):

"They [the judges] were merely interpreting the stat-
ute in accordance with the social conditions of the day,
which, presumably, the legislative body had in mind in
the enactment of the legislation then under considera-
tion. The rulings reflect the philosophy of the times, its
ideals, and its social conditions. It was the generation of
the debtor's prisons, of some 200 or more capital of-
fenses, and of the public flogging of women. It was an
era when ample work could be found for the agile
bodies and nimble fingers of small children. Defoe's
England was not long past. He noticed with approval
that at Colchester and in the Tauton clothing region

*Fiting,* 375 Mich 440 (1965); *Heider v Michigan Sugar Co,* 375 Mich
490 (1965); *Reisig v Klusendorf,* 375 Mich 519 (1965); *Wilson v
Modern Mobile Homes Inc,* 376 Mich 342 (1965); *Mosier v Carney,* 376
Mich 532 (1965); *Breckon v Franklin Fuel Co,* 383 Mich 251 (1970).

[6] Fatal accidents act, 1846, 9 & 10 Vict, c 93, § 2.

' "there was not a child or in the villages round it of above 5 years old, but, if it was not neglected by its parents and untaught, could earn its bread." ' "

Thus, it was not surprising that in that era courts required that pecuniary loss be established by a wage benefit less costs as a measure of damages. However, Justice Smith continued (pp 337–338):

"That this barbarous concept of the pecuniary loss to a parent from the death of his child should control our decisions today is a reproach to justice. We are still turning, actually, for guidance in decision, to 'one of the darkest chapters in the history of childhood.' Yet in other areas of the law the legal and social standards of 1846 are as dead as the coachman and his postilions who guided the coaches of its society through the dark and muddy streets, past the gibbets where still hung the toll of the day's executions. In most areas the development of the law has paralleled the enlightened conscience of our people. Examples abound. We no longer tolerate the intentional infliction of mental suffering. Illness from such cause is not, we now recognize, imaginary. A right to privacy is recognized, haltingly, it is true, but a start has been made. The exploitation of children by avaricious parents and guardians is no longer permitted, much less condoned. A combination of influences, all arising from the public condemnation of child labor, has resulted in almost universal State child-labor and compulsory school attendance laws. In fact, our society, by one means or another, now attempts to keep children out of the general labor market. * * *

"It follows from the foregoing that we now reject, as prayed by appellant, the child-labor measure of the pecuniary loss suffered through the death of a minor child, namely, his probable wages less the cost of his keep, in all cases consistent therewith we now overrule."

The Court then went on to state that loss of

companionship was an element of damages under the wrongful death act. 361 Mich 339–340.

In *Breckon v Franklin Fuel Co,* 383 Mich 251 (1970), a majority of the Court held that *Wycko* should be limited to its facts and that loss of companionship was not an element of damages. The Legislature by 1971 PA 65, effective March 30, 1972, amended the wrongful death act and permitted recovery for loss of society and companionship.[7]

Thus, our decision and its application is limited to cases commenced before March 30, 1972.

We hold that the Court in *Breckon* was incorrect in its interpretation of *Wycko* in that the measure of damages in wrongful death cases does include loss of society and companionship. The arguments on both sides of this issue have been thoroughly stated in numerous opinions of this Court.[8] We believe that the dissenting opinion of Justice Adams in *Breckon* properly states the law and we hereby adopt that opinion. 383 Mich 280–299.

In addition, there are certain issues raised by the majority in *Breckon* that we will deal with in greater detail. The Court in *Breckon* stated that *Wycko* only dealt with the issue of excessive damages. However, it is clear that the Court could not uphold the recovery in *Wycko* without setting up a new measure of damages for wrongful death cases. In *Wycko,* the trial judge reduced a jury verdict of $14,000 to $7,500 and stated that no child had an earning capacity of $14,000. 361 Mich 341. Our Court in *Wycko* did not contend that a child of 14

---

[7] MCLA 600.2922; MSA 27A.2922 provides in part:

"The amount of damages recoverable by civil action for death caused by the wrongful act, neglect or fault of another may also include recovery for the loss of the society and companionship of the deceased."

[8] See footnote 5, *supra.*

could earn $14,000. If it did, then the *Breckon* Court would be correct in its contention that *Wycko* never reached the issue of loss of companionship. The *Wycko* Court, however, did the exact opposite and recognized that under today's conditions a minor child is an expense. 361 Mich 341. Hence, the *Wycko* Court was forced to deal with the issue of what elements constituted damages under the wrongful death act. If the loss of companionship is not an element of damages, then any amount above medical and funeral expenses could not be recovered since the average child is not a breadwinner as he was in the nineteenth century. Thus, the Court in *Wycko* was not dealing with the issue of excessive damages but rather with the fundamental question of the proper elements of damages in a wrongful death case.

The second point is that the *Breckon* majority felt that the failure of the Legislature to act after the *Wycko* decision was not evidence of legislative intent that *Wycko* was correct. 383 Mich 276–277. We believe that the repassage by the Legislature of the wrongful death act in 1965 (after *Wycko* was decided) without change indicated legislative acquiescence of this Court's interpretation in *Wycko*. As Justice ADAMS stated in *Breckon,* 383 Mich (p 295):

"It has long been recognized that where this Court has given an interpretation to a statute with no reaction from the legislature in the form of statutory revision, it may be assumed there is legislative acquiescence in the statute's meaning. *Even more persuasive is the rule that where the basic provisions of a statute have been construed by the courts and these provisions are subsequently reenacted by the legislature, it may be assumed that the legislature acted with knowledge of the Court's decisions and that the legislature intended the reenacted statute to carry the Court's interpreta-*

*tion with it.* See: *McEvoy v City of Sault Ste. Marie*
(1904), 136 Mich 172; *Gwitt v Foss* (1925), 230 Mich 8,
12; *In re Clayton Estate* (1955), 343 Mich 101, 106, 107;
*Jeruzal v Wayne County Drain Commissioner* (1957),
350 Mich 527, 534." (Emphasis by Court.)

Moreover, when the Court in *Breckon* did limit
*Wycko,* the Legislature immediately acted to
change the interpretation of this Court. Thus,
while this is not conclusive evidence that *Wycko*
was correct, it is strong evidence that the Legisla-
ture was cognizant of our decision when it ree-
nacted without change the wrongful death act in
1965 and that the above quoted rule of statutory
construction is a proper one.

Thus, we hold that loss of companionship is an
element of pecuniary damages under the wrongful
death act and that *Breckon* is overruled.

In the *Swarthout* case, plaintiff raised two other
issues on appeal and defendant raised three issues
on cross-appeal. We believe that the opinion of the
Court of Appeals properly disposes of these issues.
33 Mich App 395. In the *Smith* case, the city filed
a cross-appeal contending that the governmental
immunity statute[9] should be given retrospective
application. GCR 1963, 853.2(5) provides:

"Within 20 days after service upon him of notice of
an order granting application for leave to appeal,
whether before or after decision by the Court of Ap-
peals, appellee who has not theretofore filed a claim of
cross-appeal shall have the right to file a claim of cross-
appeal in the Supreme Court in substantially like form
and with like effect as under Rule 807. No filing fee
shall be required for filing such claim of cross-appeal."

In this case, leave to appeal by our Court was
granted on June 9, 1972 and the claim of cross-

---

[9] 1970 PA 155; MCLA 691.1401 *et seq.;* MSA 3.996(101) *et seq.*

appeal was not filed until August 25, 1972. This is a clear violation of our Court Rules and no exculpatory reason has been advanced by the defendant for the delay of more than 60 days. We therefore decline to deal with this issue.

In *Smith v City of Detroit,* the judgment is reversed and the cause is remanded for a trial in accordance with this opinion. In *Swarthout v Beard,* the judgment is reversed and the cause is remanded for entry of judgment on the jury verdict. In both cases costs to plaintiff.

T. M. KAVANAGH, C. J., and ADAMS and WILLIAMS, JJ., concurred with SWAINSON, J.

T. E. BRENNAN, J. *(dissenting).* The majority refer several times to "pecuniary damages". The phrase is redundant and confusing. No one has ever doubted the right of a plaintiff in a wrongful death action to recover "pecuniary damages". All damages are pecuniary damages. Damage verdicts are always expressed in dollars and cents. They result in money judgments.

The issue, so long debated here, was never whether "pecuniary damages" could be awarded for loss of society and companionship. The issue was whether or not loss of society and companionship was a "pecuniary injury" within the meaning of the former statute which permitted the recovery of " * * * damages * * * with reference to pecuniary injury * * * ".

The argument that *Breckon* misread *Wycko* because *Wycko* overruled *Courtney* does not follow, unless it be presumed that there is no middle ground between loss of earnings and loss of companionship.

By the way, whatever happened to *Rohm v Stroud,* 386 Mich 693 (1972)?

BLACK and T. G. KAVANAGH, JJ., concurred with T. E. BRENNAN, J.